06-3886-cv
Ruotolo v. City of New York

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: September 25, 2007    Decided: February 6, 2008)

Docket No. 06-3886-cv

- - - - - - - - - - - - - - - - - - - -X

ANGELO RUOTOLO,

Plaintiff-Appellant,

- v.-

CITY OF NEW YORK; RAYMOND KELLY,
Commissioner of Police, City of New
York; PATRICK J. TIMLIN, Former Chief
of Police, City of New York, Bronx;
RAYMOND ROONEY, Deputy Inspector, New
York City Police Department, formerly
Commanding Officer 50th Precinct,
Bronx; WILLIAM RILEY, Lieutenant, New
York City Police Department, formerly
Integrity Control Officer, 50th
Precinct, Bronx,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - -X

Before:  JACOBS, Chief Judge, LEVAL and SOTOMAYOR,
Circuit Judges.

Appeal from the judgment of the United States District

Court for the Southern District of New York (Stein, J.) dismissing, under Fed. R. Civ. P. 12(b)(6), a police officer's claim that he was subjected to retaliation in violation of his First Amendment rights for [i] writing an official report about health concerns at his precinct, and [ii] filing a lawsuit that challenged personnel action taken against him in the wake of that report.  Also appealed is the denial of leave to amend the complaint.

AFFIRMED.

ANDREW M. WONG, New York, NY, for Plaintiff-Appellant.

TAHIRIH M. SADRIEH, Assistant Corporation Counsel (Michael A. Cardozo, Corporation Counsel for the City of New York), New York, NY, for Defendants-Appellees.

DENNIS JACOBS, Chief Judge:

Retired police sergeant Angelo Ruotolo ("Ruotolo") sues the City of New York (the "City") and various officials and members of the New York City Police Department (collectively, the "NYPD"), alleging retaliation in violation of the First Amendment for his speech regarding health concerns at his precinct.  He appeals from a judgment of the United States District Court for the Southern District of New York (Stein, J.), granting defendants'

motion to dismiss the "Second Amended and Supplemental Complaint" (the "Complaint") for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Ruotolo's speech consisted of a report concerning health conditions at his precinct, which he was directed to prepare in his role as precinct Safety Officer, and a lawsuit he filed in the wake of retaliatory personnel action taken against him after the report was submitted. The district court dismissed, citing Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006), on the ground that both the report and the lawsuit were unprotected because Ruotolo was speaking as a public employee in the course of his employment duties. No appeal is taken from the dismissal of the claim premised on Ruotolo's report. As to Ruotolo's lawsuit, we affirm on the ground that it did not address a matter of public concern. And we affirm the district court's exercise of its discretion to deny leave to amend the complaint based on plaintiff's delay and the undue burden and prejudice to defendants.

**BACKGROUND**

Ruotolo was an NYPD Sergeant with 20 years service when

3

he retired in 2004.  In October 1999, Ruotolo was serving as the Training and Safety Officer for the 50th Precinct in the Bronx.  When a local newspaper reported possible contamination and health risks at the precinct from underground gasoline storage tanks, Ruotolo was assigned--in his capacity as Safety Officer--to survey employee illnesses and deaths that might be related to this potential environmental hazard.  His two-page report, dated October 28, 1999 (the "October 1999 Report"), and titled "Survey Pursuant to Request," identified a seemingly large number of cancers, miscarriages, birth defects and other health problems afflicting individuals working at the precinct. Ruotolo recommended a thorough environmental evaluation, which was done.

The environmental experts reported that leakage from the fuel storage tanks into the soil and air had raised contaminant levels above OSHA and EPA safety standards.  At great expense and over many months, the City undertook to abate the hazard.  Representatives of the Patrolmen's Benevolent Association ("PBA") came to the precinct in April 2000 to sign up potential plaintiffs for a personal injury lawsuit.  One of the PBA lawyers asked to speak with Ruotolo

4

because he was the author of the October 1999 Report. As Ruotolo testified in his March 2005 deposition in this lawsuit, he answered the PBA's questions with the knowledge of his commanding officer, spoke to no one else about the proposed lawsuit, did not himself enlist as a plaintiff, and never learned whether an action was filed. This encounter was not pled in any version of Ruotolo's complaint prior to dismissal of the action, but it is relevant to our analysis.

Ruotolo alleges that he experienced on-the-job retaliation starting soon after submitting the October 1999 Report to his commanding officer, and continuing until he retired. The retaliation included: frequent reassignments to undesirable shifts and to duties he considered beneath his rank and tenure, denial of use of leave time, transfer to a less desirable precinct, and discipline for trivial or fabricated reasons. After Ruotolo alleged those acts of retaliation (in the original complaint in this lawsuit, filed in July 2003), Ruotolo alleged (in amended complaints) that the retaliation took additional forms, including verbal harassment by superior officers, denial of overtime assignments, the first negative performance review of his career, and excessive discipline for a minor infraction.

As a result of that discipline, Ruotolo was put on "modified duty," and was stripped of his badge, shield, identification card and weapons.  He was still on modified duty when he retired on July 26, 2004, which meant he lost the privilege of carrying a firearm after retirement (thus reducing his prospect for future income in the security field).  Based on these experiences, Ruotolo attributed to the City a "municipal custom and practice of tolerance of the violation of [whistle-blowers'] rights."

As compensatory damages, Ruotolo alleges lost income and reduced pension benefits.  Ruotolo also seeks punitive damages, and an injunction to (i) expunge from his employment records the retaliatory disciplinary charges and performance reviews, and (ii) restore impaired retirement benefits and privileges.

The original complaint identified the October 1999 Report as the single episode of speech underlying his First Amendment claim.  Over the next three years of active litigation, Ruotolo was twice given leave to amend his complaint, notably to add the filing of his lawsuit as the second--and only other--instance of speech for which Ruotolo alleged retaliation.  By May 2006, the parties had concluded

extensive discovery, narrowed the claims through multiple dispositive motions (various state law claims were dismissed on an earlier Rule 12(b)(6) motion), litigated numerous discovery and trial-related motions, and submitted their final joint pretrial order.

Trial on Ruotolo's surviving claims was two weeks away when the Supreme Court ruled in Garcetti v. Ceballos that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S. Ct. 1951, 1960 (2006). Upon the defendants' renewed motion to dismiss, the district court ruled that the First Amendment claim succumbed to Garcetti because Ruotolo admittedly wrote the October 1999 Report in his capacity as Safety Officer, and because the lawsuit was premised solely on non-actionable speech. As to the lawsuit, the court explained:

> After Garcetti, for a lawsuit adequately to charge a First Amendment retaliation claim, the lawsuit must be predicated on speech made by a public employee as a citizen, and not pursuant to his or her official duties. To hold otherwise--that filing a lawsuit alleging retaliation for non-protected speech would give rise to a First Amendment complaint--would defy logic, allowing a

7

> plaintiff to bootstrap a non-actionable objection to legitimate employer discipline into a valid First Amendment claim.

(Emphasis in original).

In opposing the Rule 12(b)(6) motion, Ruotolo unsuccessfully attempted to rehabilitate his Complaint by reference to his deposition testimony about the April 2000 conversation with a PBA representative. For the first time, Ruotolo argued that he was not then speaking in his official capacity as Safety Officer (and author of the October 1999 Report), but rather was speaking as a private citizen on a health matter of public concern. As Ruotolo had as yet never alleged the April 2000 PBA conversation, the district court decided that the exchange with the PBA was outside the pleadings and not properly considered on a motion to dismiss.

Final judgment was entered on July 21, 2006. Ruotolo moved to vacate the judgment and for leave to file a Third Amended and Supplemental Complaint. The district court denied vacatur because Ruotolo "failed to demonstrate a need to prevent manifest injustice or correct a clear error that would affect the outcome of the case." The district court also denied leave to amend to add the PBA conversation

8

because of undue delay, and the undue burden and prejudice that would result to defendants. Ruotolo timely appealed these rulings and the final judgment.

## DISCUSSION

We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1974 (2007).

## A

On appeal, Ruotolo concedes that Garcetti mandates dismissal of the First Amendment claim premised on the October 1999 Report. Ruotolo argues, however, that the district court erred in reading Garcetti to require dismissal of the claim premised on his filing a federal lawsuit. We hold that Ruotolo's claim based on his lawsuit

must fail because his lawsuit did not address a matter of public concern.

Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) "whether the employee spoke as a citizen on a matter of public concern" and, if so, (2) "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Garcetti, 126 S. Ct. at 1958 (citing Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will County, 391 U.S. 563, 568 (1968)); see also Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006) (rephrasing the test for a First Amendment retaliation claim as three-pronged, requiring plaintiffs to prove: "(1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision" (internal quotation marks and citation omitted)). The majority opinion in Garcetti focused on the first inquiry, and specifically its operation as a limiting principle when the government is acting as an employer, exercising control

10

over employee speech in the interest of the "efficient provision of public services." Garcetti, 126 S. Ct. at 1958. Recognizing that government employers (like private employers) "have heightened interests in controlling speech made by an employee in his or her professional capacity," the Supreme Court ruled that a public employee speaking in his official capacity is not speaking as a citizen for First Amendment purposes, id. at 1960, and employer retaliation for such speech does not justify the "displacement of managerial discretion by judicial supervision," id. at 1961.

The principal episode of speech at issue in Garcetti was a memo in which a deputy district attorney alerted his supervisors to perceived irregularities in how a search warrant was obtained in a particular case. In precluding that First Amendment claim, the Court emphasized that the memo was written as part of the employee's official duties and that the employer's negative reaction to it "simply reflects the exercise of employer control over what the employer itself has commissioned or created." Id. at 1960. The Garcetti plaintiff "did not act as a citizen when he went about conducting his daily professional activities . . . . When he went to work and performed the tasks he was paid

11

to perform, [plaintiff] acted as a government employee."
Id. Similarly (as is undisputed here), Ruotolo prepared his October 1999 Report as part of his official duties, and for that reason Ruotolo has not appealed from this aspect of the district court's ruling.[1]

Ruotolo argues that his First Amendment retaliation claim nonetheless survives as to damages arising out of post-lawsuit retaliation, because this lawsuit was filed in his capacity as a private citizen. The district court rejected this argument, holding that under Garcetti, the First Amendment does not protect a government employee from retaliation for filing a lawsuit in which the underlying retaliation claim rests on non-actionable official speech. We need not decide whether Ruotolo's lawsuit amounts to speech by a "citizen" rather than by a "public employee" within the meaning of Garcetti: a simpler ground is available because in any event that speech is not "on a

---

[1] As the Garcetti Court observed, public employees who suffer retaliation for their official speech are not without recourse, and should avail themselves of the "powerful network of legislative enactments--such as whistle-blower protection laws and labor codes--available to those who seek to expose wrongdoing." Garcetti, 126 S. Ct. at 1962. We express no opinion as to the availability of such recourse to Ruotolo.

matter of public concern." Id. at 1958.

"Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999) (citing Connick v. Myers, 461 U.S. 138, 147-48 and n.7 (1983)). The heart of the matter is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader public purpose." Lewis, 165 F.3d at 163-64. Ruotolo's lawsuit sought to redress his personal grievances. It did not seek to advance a public purpose. We therefore hold that his lawsuit did not constitute speech on a matter of public concern, and we affirm the district court's dismissal on that basis.

As to the personal nature of Ruotolo's grievances, the Complaint alleges that Ruotolo wrote the October 1999 Report because he was assigned to do so as part of his job, and that the Report led to retaliatory acts affecting Ruotolo alone. The acts of alleged retaliation against Ruotolo bear upon the circumstances and perquisites of his employment, such as reassignment, transfer, time off, and discipline.

13

The section of the Complaint titled "Consequences of the Retaliation" enumerates adverse career, financial and emotional effects that Ruotolo suffered personally. The relief sought is also almost entirely personal to Ruotolo, including compensatory damages and an injunction relating to Ruotolo's employment records.

The Complaint accuses the City of routinely tolerating the violation of whistleblower rights, and seeks punitive damages to deter "future illegal and retaliatory conduct," arguably hinting at some broader public purpose. However, retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by "the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern." Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir. 1991).

In Ezekwo, a physician complained about aspects of her hospital residency program, including unfair evaluation of her by attending physicians, the lack of opportunity to perform surgery and learn specialized skills, and discrimination on the basis of race, sex and national origin. She also complained generally about the attending

14

physicians' poor management skills and teaching methods, their lack of punctuality, and the lack of proper hospital maintenance.  Viewing these complaints "objectively and as a whole," we held that, for First Amendment purposes, these complaints were not matters of public concern.  Id. Although the quality of a physician-training program may affect the public, we concluded that the plaintiff "was not on a mission to protect the public welfare.  Rather her primary aim was to protect her own reputation and individual development as a doctor."  Id.; see also Tiltti v. Weise, 155 F.3d 596, 603 (2d Cir. 1998) (finding no public concern in complaints about working conditions made by customs officers who alleged retaliation when they were reassigned, despite their claim that the relocations would adversely affect homeland security); Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 252 (2d Cir. 2006) (finding police officer's lawsuit is a matter of public concern because his allegations concerned "discrimination problems generally and were not limited to instances affecting only [the plaintiff].").

As the Eleventh Circuit observed, "[a] public employee may not transform a personal grievance into a matter of

15

public concern by invoking a supposed popular interest in the way public institutions are run." Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007) (quoting Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986)). A generalized public interest in the fair or proper treatment of public employees is not enough. Because Ruotolo's lawsuit concerns essentially personal grievances and the relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern and cannot sustain a First Amendment retaliation claim.

**B**

After final judgment was entered dismissing the Complaint, Ruotolo moved to vacate the judgment and file a Third Amended and Supplemental Complaint. Thus Ruotolo sought to plead another instance of speech that would not be vulnerable to the specific Garcetti analysis that had defeated the claim premised on the October 1999 Report. The proposed amended pleading frames Ruotolo's April 2000 conversation with PBA representatives as an episode of protected speech made in his capacity as a private citizen. A denial of a motion to vacate a judgment under Rule 60(b)

16

is reviewed for abuse of discretion, see Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir. 1998), likewise, a denial of leave to amend a complaint under Rule 15(a), see Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam).

A party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b). See Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 244-45 (2d Cir. 1991) (noting that Rule 15(a)'s liberal amendment policy should not "be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation" (internal quotation marks and citation omitted)). Ruotolo moved to set aside the judgment pursuant to Rule 60(b), a mechanism for "extraordinary judicial relief" invoked only if the moving party demonstrates "exceptional circumstances." Paddington Partners v. Bouchard, 34 F.3d 1132, 1142 (2d Cir. 1994) (citation omitted). The district court found no such "exceptional circumstances," and Ruotolo's appeal does not press for relief on that ground. Nor does there appear to be a basis for Rule 60(b) relief. Therefore, ordinarily "it

17

would be contradictory to entertain a motion to amend the complaint."  Nat'l Petrochemical Co. of Iran, 930 F.2d at 245.  However, we have said in dicta that "in view of the provision in rule 15(a) that 'leave [to amend] shall be freely given when justice so requires,' it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment."  Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Even assuming that a post-judgment motion to amend can be heard, we see no basis for finding any abuse of discretion here.

Leave to amend, though liberally granted, may properly be denied for:  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman, 371 U.S. at 182.  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend."  State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); see also 6 Charles Allen Wright, Arthur R. Miller & Mary Kay

18

Kane, Federal Practice and Procedure: Civil 2d, § 1487, at 613 (1990 & 2007 Supp.) (citing prejudice to the opposing party as "the most important factor" and "the most frequent reason for denying leave to amend"). In denying Rule 15(a) relief, the district court found that Ruotolo's delay in seeking leave to amend was inexcusable given the previous opportunities to amend, and the defendants' burden and prejudice. These findings were well within the bounds of its discretion.

When the original complaint was filed in 2003, Ruotolo certainly knew about his own conversation with the PBA back in 2000. Ruotolo seeks to excuse his delay in pleading this conversation on the ground that he did not realize its significance until the Supreme Court spoke in Garcetti. True, Ruotolo was not required to plead every conversation he had as a private citizen; but he may be expected to have pled every such conversation as to which he was asserting unconstitutional retaliation. Nothing in the law pre-Garcetti prevented or inhibited him from pleading the PBA conversation. Even after Ruotolo testified about it at his March 2005 deposition, he evidently did not believe that he suffered unconstitutional retaliation on that account, and

19

therefore did not mention it in his Second Amended and Supplemental Complaint filed in August 2005. "When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990) (denying leave to amend complaint to plead additional causes of action based on foreign law long known to movant).

In gauging prejudice, we consider, among other factors, whether an amendment would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). Undue prejudice arises when an "amendment [comes] on the eve of trial and would result in new problems of proof." Fluor Corp., 654 F.2d at 856 (reversing denial of leave to amend sought promptly after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery").

Ruotolo argues that he should not be faulted for his delay in seeking to amend his complaint prior to the Garcetti decision because prior to Garcetti he had no good reason to do so. We need not decide what would be the force of this argument because Ruotolo did not move promptly following the Garcetti decision, when the vulnerability of his complaint became evident. Ruotolo waited until after the district court dismissed his complaint to propose an amendment.

Ruotolo's proposed amendment comes post-judgment in a case that had been trial-ready, and pleads a new scenario that would prevent disposition of the case until either further motion practice or a trial--and any trial or motion practice would likely be delayed pending discovery on open questions. Did Ruotolo participate in the PBA conversation in his official capacity? Who said what? Did that conversation provoke retaliation? Can that retaliation be teased apart from the retaliation allegedly premised on the October 1999 Report? Because the proposed amendment would unduly burden and prejudice defendants in the circumstances of this case, it is properly barred. See Bradick v. Israel, 377 F.2d 262, 263 (2d Cir. 1967) (per curiam) (affirming

21

denial of motion to amend brought on eve of trial, adding new theories of law and new problems of proof); 6 Wright, Miller & Kane, § 1487, at 623 and n.9 (amendment is prejudicial when it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation").  We therefore see no ground for vacatur or other post-judgment relief.

## C

Ruotolo's remaining arguments pertain to his due process claim and the New York State whistle-blower protection statute.  Those claims are not properly before us because they were raised for the first time on appeal.  See Bogle-Assegai v. Connecticut, 470 F.3d 498, 504 (2d Cir. 2006).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.