SUMMARY ORDER
Plaintiff-Appellant Eugene Glicksman (“Glicksman”) appeals from the January 25, 2008 decision of the United States District Court for the Southern District of New York (Preska, J.) granting summary judgment to Defendants-Appellees New York City Environmental Control Board, et al. (“Defendants”). Glicksman brought suit under 42 U.S.C. § 1983 alleging that Defendants violated, inter alia, his rights under the First Amendment and Due Process Clause of the Fourteenth Amendment. On appeal, Glicksman principally argues that the district court (1) incorrectly determined that his First Amendment retaliation claim was barred by Garcetti v. *690 Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); and (2) failed to adequately consider his claim that New York City Administrative Law Judges have a right to “decisional independence” that is relevant to the disposition of this case. Plaintiffs Br. at 45. We assume the parties’ familiarity with the underlying facts, procedural history, and the issues presented for review.
“We review an award of summary judgment de novo, and we will uphold the judgment only if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment was warranted as a matter of law.” Molinari v. Bloomberg, 564 F.3d 587, 595 (2d Cir.2009). Prior to his termination on September 17, 1998, Glicksman was a New York City Administrative Law Judge (“ALJ”) at the New York City Taxi and Limousine Commission (“TLC”). Defendants claim that Glicksman was terminated for failing to adhere to TLC adjudication procedure at inquest hearings, during which taxi cab drivers do not appear. Specifically, Defendants contend that Glicksman refused to amend summonses setting forth invalid Rule 2-21 (a) charges to assert valid Rule 2-21 (b) charges. Glicksman does not deny this. See, e.g., App. at 260 (arguing before the district court that Glicksman was “properly serving his judicial function by refusing to charge a new offense in absentia .... ”). Instead, Glicksman claims, in his affidavit, that it would have been illegal or otherwise inappropriate for him to follow TLC adjudication procedure. See, e.g., id. at 290 (“Instead of putting an outright stop to [the practice of overcharging taxi drivers with Rule 2-21(a) violations], TLC told the ALJs to amend the over-charges at inquests, when the accused was not even present. ... This would have been a rather serious due process violation.”). He thus refused to do so, resulting in his allegedly retaliatory discharge.
The elements of a First Amendment retaliation claim in the context of government employment can be stated as follows: “(1) [plaintiff] engaged in constitutionally protected speech because [he] spoke as [a] citizen[ ] on a matter of public concern; (2) [plaintiff] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision.” Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008). The Supreme Court elaborated on the first element in Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006): “We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.” Garcetti, 547 U.S. at 421, 126 S.Ct. 1951. Glicksman conceded in his briefing below — and does not claim otherwise before this Court — that his First Amendment claim is based on the decisions he issued as an administrative law judge. See, e.g., App. at 270 (“This is the very essence of plaintiffs free speech claim — his decisions as an administrative law judge.... ”). Thus, the speech at issue falls squarely within the scope of Glicksman’s official duties as an administrative law judge— deciding cases.
Relying on Fierro v. City of New York, 591 F.Supp.2d 431 (S.D.N.Y.2008), Glicksman argues that Garcetti is inapplicable when an employee is terminated for speech that constitutes a refusal to undertake wrongful conduct. See Fierro, 591 F.Supp.2d at 442 (“The question of whether speech stemming from a supervisor’s instruction to a subordinate to commit a wrongful — perhaps even criminal — act falls under Garcetti is one that has not yet been *691 addressed by the Second Circuit.”); see also Fierro v. City of New York, 341 Fed.Appx. 696, 698 (2d Cir.2009) (“Without addressing the substantive question of whether a public employee’s refusal to abide by an instruction to engage in misconduct is protected speech under the First Amendment, such protection was certainly not clearly established at the time Bleadon engaged in her allegedly retaliatory conduct.”). Even assuming that Gareetti left open the possibility that a public employee’s refusal to engage in clearly wrongful conduct while acting within his job responsibilities may be protected speech, hit see Gareetti, 547 U.S. at 425-26, 126 S.Ct. 1951 (noting that a powerful network of legislative enactments, such as whistle-blower protection law and labor codes, available to those who seek to expose wrongdoing, “as well as obligations arising from ... other applicable constitutional provisions and mandates of the criminal and civil laws, protect employees and provide checks on supervisors who would order unlawful or otherwise inappropriate actions” (emphasis added)), we need not reach the issue. Gareetti made clear that an employee’s mere disagreement with government policy does not give him license to carry out his employment as he sees fit (and specifically, to disregard agency policy because there may be a col-orable argument as to its impropriety) merely because such employment involves speech. See id. at 422, 126 S.Ct. 1951 (“The fact that [Ceballos’s] duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance.”); id. (“[The prospect of protection for contributions to civic discourse] does not invest [government employees] with a right to perform jobs however they see fit.”); id. at 422-23, 126 S.Ct. 1951 (“Supervisors must ensure that their employees’ official communications are accurate, demonstrate sound judgment, and promote the employer’s mission.”).
Here, most of Glicksman’s objections to TLC inquest procedure — specifically, to the amending of invalid Rule 2-21 (a) summonses to valid Rule 2-21 (b) summons in absentia — lack merit for the simple reason that taxi drivers are afforded a subsequent opportunity to contest all such charges. See SpecApp. at 54 (“[I]f the respondent fails to appear on the scheduled ... hearing date, a default charge ... is added to the original underlying charge(s) and an inquest hearing is held in respondent’s absence. Notification of the findings of the ALJ are then mailed to the respondent. ... At a subsequent Motion to Vacate hearing, the burden is on the respondent to show both excusable neglect with respect to the default and a meritorious defense with respect to the underlying charge[, which] need not be more than an offering of proof that if substantiated could result in the dismissal of the charges.”). Glicksman contends, in addition, that he was issued an internal agency directive in violation of § 1046(c) of the City Administrative Procedure Act (“CAPA”). That provision reads as follows: “No ex parte communications ... shall be received by a hearing officer, including internal agency directives not published as rules.” Id. at 28. Glicksman’s briefing before this Court, however, does not indicate the source or content of the internal directive at issue, and hence why such directive violated the CAPA. See Appellant’s Br. at 22. Because Glicksman devoted only two vague sentences to this point, we deem the issue to be waived. See Norton v. Sam’s Club, 145 F.3d 114, 117 (2d Cir.1998) (“Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.”). Thus, even assuming that Glieksman’s reading of Gar-ceta is correct, Glicksman has not made a showing that he was directed to undertake *692 clearly illegal or otherwise inappropriate conduct, and hence Glicksman’s refusal to follow TLC adjudication procedure is not protected speech.
Glicksman’s effort to frame the same claim as the assertion of a right to judicial independence fares no better. To the extent that Glicksman’s claim is grounded in the First Amendment, see, e.g., Perry v. McGinnis, 209 F.3d 597, 604 (6th Cir.2000) (“We find that a disciplinary hearing decision ... is a communicative act entitled to First Amendment protection.”), it fails for the same reasons as his First Amendment retaliation claim — i.e., it is barred by Gar-ceta. To the extent that Glicksman attempts to ground such a right in other sources, see Nash v. Califano, 613 F.2d 10, 15 (2d Cir.1980) (“[Tjhese [Administrative Procedure Act] provisions confer a qualified right of decisional independence upon ALJs ... [which] is a creation of statute, rather than the Constitution.”), we are not persuaded that New York City ALJs possess a right to judicial independence of the sort that would permit an ALJ to resist agency policy — at least not based on the sources cited by Glicksman. Indeed, Glicksman conceded as much to the district court. See App. at 507 (“[T]he City of New York still has nothing akin to a guarantee of decisional independence of ALJs.... Thus, we have no choice but to fall back on the United States Constitution.”). In his reply brief, Glicksman concedes that he lacks a “formal and express enactment” on which to base his “decisional independence” claim, see Reply Br. at 8, but then seeks to recast his claim as a procedural due process claim. Id. at 9. This argument comes too late, see Keefe on Behalf of Keefe v. Shalala, 71 F.3d 1060, 1066 (2d Cir.1995) (“Normally, we will not consider arguments raised for the first tune in a reply brief .... ”), and, in any event, Glicksman has failed to contest the district court’s dismissal of his due process claim on the ground that the “availability of an Article 78 proceeding satisfies the requirements of the due process clause in [his] case,” App. at 626.
We find Glicksman’s remaining arguments in this appeal to lack merit.
For the foregoing reasons, the judgment of the district court is AFFIRMED.