09-1751-cv
In re Authentidate Holding Corp. Sec. Litig.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 12th day of March, two thousand ten.

PRESENT:
>ROBERT A. KATZMANN,
>REENA RAGGI,
>>*Circuit Judges*,
>JOHN G. KOELTL,[*]
>>*District Judge*.

_____

ILLINOIS STATE BOARD OF INVESTMENT,

>*Plaintiff-Appellant*,

>v.                                                                09-1751-cv

AUTHENTIDATE HOLDING CORP., SURENDRA PAI,
JOHN J. WATERS, DENIS H. BUNT, PETER R. SMITH, JOHN T. BOTTI,

>*Defendants-Appellees*.

_____

For Plaintiff-Appellant:     JOHNSTON DE F. WHITMAN, JR., Entwistle & Cappucci, New York, NY (Andrew J. Entwistle, Jordan A. Cortez, Entwistle

---

[*] The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

& Cappucci, New York, NY; Lisa Madigan, Attorney General, Michael A. Scodro, Solicitor General, Deborah Ahlstrand, Assistant Attorney General, Office of the Illinois Attorney General, Chicago, IL, *on the brief*)

For Defendants-Appellees:   IRWIN H. WARREN (Miranda S. Schiller, Margarita Platkov, *on the brief*), Weil Gotshal & Manges, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Swain, *J.*).

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Plaintiff-Appellant Illinois State Board of Investment ("ISBI") appeals from a judgment of the District Court for the Southern District of New York (Swain, *J.*) dismissing in its entirety ISBI's Second Amended Complaint ("the SAC"), in which ISBI alleges various violations of the federal securities laws by the Defendants-Appellees, Authentidate Holding Corporation and its individual officers and directors (collectively, "Authentidate"). We assume the parties' familiarity with the underlying facts and the procedural history of the case.

We review *de novo* the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008). "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

2

*see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 & n.2 (2d Cir. 2007). A

complaint alleging securities fraud must satisfy the heightened pleading requirements of the

Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure

9(b) by stating with particularity the circumstances constituting fraud. *See generally*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful to "use or

employ, in connection with the purchase or sale of any security . . . any manipulative or

deceptive device or contrivance in contravention of such rules and regulations as the [SEC]

may prescribe." 15 U.S.C. § 78j(b). Securities and Exchange Commission Rule 10b-5

implementing the statute states that it "shall be unlawful for any person . . . [t]o make any

untrue statement of a material fact or to omit to state a material fact necessary in order to

make the statements made, in the light of the circumstances under which they were made,

not misleading." 17 C.F.R. § 240.10b-5(b). Under the law of this Circuit, to state a claim

under Rule 10b-5 a plaintiff must allege that, in connection with the purchase or sale of

securities, the defendant made material misstatements or omissions of material fact, with

scienter, and the plaintiff's reliance on the defendant's action caused injury to the plaintiff.

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000).

We note at the outset that on this appeal ISBI presents, as it did to the court below, a

veritable forest of indistinct and overlapping claims, rendering it difficult to identify ones

for which dismissal may have been inappropriate. Nonetheless, we find that the SAC

properly states claims with respect to several statements Authentidate made—or did not

make—regarding possible amendment of the performance metrics in the agreement with

the United States Postal Service ("USPS"): the statements made in the September 8

3

conference call and its allegedly misleading statements in February and May 2005.

ISBI first argues that Authentidate had a duty to update statements made on September 8, 2004. In a press release issued that day, Authentidate asserted that "the Company believes that it has reached an agreement in principle and anticipates that an agreement amending the original metrics will be completed shortly." J.A. 176. In a conference call that same day, Authentidate stated the following: "[We] hope to have an amendment to our original agreement within the next few weeks. . . . We believe we have an agreement in principle. . . . [W]e're very confident we should have this amendment signed in the not too distant future." J.A. 1018, 1028.

The SAC alleges that by December 2004 Authentidate knew that the USPS would not agree to amend the metrics, as evidenced by a June 2005 statement from defendant Waters stating that, after Authentidate received the First Deficiency Notice from the USPS in September 2004, discussion with the USPS about amending the metrics "dragged on for two or three months," but "we then learned that the [USPS] did not want to continue negotiations towards a contract amendment and we reported that as well."[1] J.A. 835. Accordingly, Authentidate had a duty to alert the market that the amendment of the metrics it predicted on September 8 would not be forthcoming. *See In re Time Warner Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) (holding that a duty to update prior statements arises when those statements "have become misleading as the result of intervening events").

The district court found the statement in the September 8 press release

---

[1] Authentidate contests ISBI's characterization of the facts regarding this issue, but on a motion to dismiss we must presume that ISBI's account is true. *See Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003).

4

nonactionable, in part, because Authentidate noted that there was "no guarantee" that an agreement would be reached. We agree that the statement is nonactionable, although we rely on the "bespeaks caution" doctrine, which was not cited by the district court.[2] The doctrine renders certain forward-looking statements "immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). Given the explicit "no guarantee" warning, a reasonable investor would not have been "misled into thinking" that an amendment was definitively forthcoming. *See id.* at 359.

The statements made in the September 8 conference call, however, were not accompanied by sufficient cautionary language to negate liability under the "bespeaks caution" doctrine. The statements communicated principally that an agreement to amend the metrics was imminent, if not formally concluded, and did not adequately alert investors to the risk that an agreement would not actually materialize.[3] Therefore, we find that the

---

[2] To the extent that the court dismissed this claim because it found that, even without the "bespeaks caution" defense, Authentidate was never under a duty to update the statement in the September 8 press release, we disagree. Although this Court has found that there is "no need to update when the original statement was not forward looking and does not contain some factual representation that remains 'alive' in the minds of investors as a continuing representation," *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 163 F.3d 102, 110 (2d Cir. 1998), the statement that "an agreement amending the original metrics will be completed shortly" was clearly forward-looking and was likely to remain "alive" in the minds of reasonable investors. Rather than being a "vague statement[] of optimism," *id.*, the September 8 statement is "the sort of definite positive projection[]" that this Court has found "require[s] later correction" when intervening events render it misleading, *Time Warner*, 9 F.3d at 267.

[3] Although Authentidate began the call with a boilerplate warning that forward-looking statements were "subject to certain risks and uncertainties," J.A. 1016, the warning did not put investors on notice of the particular risk at issue, *see Halperin*, 295 F.3d at 359 (observing that a

5

SAC alleges sufficient facts to support a claim that Authentidate failed to inform investors, as it was required to, that the September 8 conference call statements had been rendered misleading by subsequent events.

In addition, the SAC alleges that Authentidate made affirmatively misleading statements in February and May 2005 when it stated "[w]e did a few things recently which we think put us back in compliance [with the Revenue metrics]" and "management believes it cured the metric deficiency." SAC ¶¶ 119, 127. The SAC alleges facts indicating that, at the time Authentidate made these statements, it knew that (1) its exceedingly low sales meant that compliance with the original metrics was a virtual impossibility and (2) negotiations with the USPS to amend the metrics had ended no later than December 2004. SAC ¶¶ 119-21, 127-28, 137.

Authentidate does not meaningfully dispute that the SAC properly states a claim in this respect. It asserts instead that, because of cautionary language accompanying these statements, they are nonactionable under the "bespeaks caution" doctrine and the PSLRA's "safe harbor" provision. Both defenses, however, apply only to forward-looking statements, and the statements in question were statements of then-present fact. *See* 15 U.S.C. § 78u-5(c)(1) (stating that "a person . . . shall not be liable with respect to any *forward-looking statement*") (emphasis added); *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96-97 (2d Cir. 2004) ("[M]isrepresentation of present or historical facts cannot be cured by cautionary language."). Accordingly, we find that the SAC properly alleges that the February and May 2005 statements were misleading.

plaintiff may overcome cautionary language that did not "expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss").

6

We are cognizant that, to state a claim under Rule 10b-5, ISBI must also allege facts establishing the materiality of the misstatements and omissions regarding amendment of the metrics.[4] To fulfill the materiality requirement there must be a substantial likelihood that the statement or omission "significantly altered the 'total mix' of information made available," as viewed by the reasonable investor. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). A complaint cannot be dismissed for lack of materiality unless the statements in question "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The SAC alleges—and Authentidate does not dispute—that during the Class Period Authentidate's sales fell well short of the levels mandated in the agreement. SAC ¶ 9. This shortfall was ground for the USPS to terminate. In addition, we note that the SAC alleges that Authentidate heralded the agreement as the "most significant development in the history of [the] company," Authentidate's stock price rose dramatically based on market anticipation of the sales contemplated in the agreement, and on two occasions it fell precipitously following Authentidate's public revelation of its failure to achieve the metrics set forth in the agreement. SAC ¶¶ 3, 13, 14, 135. We therefore cannot conclude that information regarding amendment of the agreement—which would potentially have allowed Authentidate to remain in compliance with its terms and avoid cancellation by the USPS—was "so obviously unimportant to a reasonable investor" that dismissal of these

---

[4] A plaintiff must also establish causation and injury. The district court did not address these elements with respect to any of ISBI's claims, nor do the parties discuss them in their briefs to this Court, and therefore we do not consider them here.

claims on grounds of materiality would be appropriate.[5]

Accordingly, we find that the SAC alleges sufficient facts to state claims premised on Authentidate's duty to update the statements made in the September 8 conference call and its allegedly misleading statements in February and May 2005. Because the district court appears not to have considered these statements as a basis for liability, we vacate the court's dismissal of the complaint as to these claims.

The district court was correct, however, to dismiss all claims relating to Authentidate's general failure to reveal, prior to release of the First Deficiency Notice in July 2004, the difficulties it was experiencing in meeting the revenue metrics called for in the agreement it had with the USPS. These claims fail because the SAC does not allege facts establishing that Authentidate had a duty to reveal this information. A duty to disclose "arises whenever [nonpublic] information renders prior public statements materially misleading." *Time Warner*, 9 F.3d at 268. A party is not required to disclose a fact "merely because a reasonable investor would very much like to know that fact." *Id.* at 267. As the district court noted, the SAC does not cite any public statements made by Authentidate predicting that it would achieve a certain level of revenue or sales by a certain date. It goes without saying that Authentidate was under no duty to disclose information that would correct prior statements it never made.

---

[5] In its brief to this Court, Authentidate suggests that any information regarding its difficulties in meeting the terms of the agreement was not material, in part, because the USPS could terminate the agreement at any time and thus investors would not have reasonably relied on continuance of the agreement in making their investment decisions. We note, however, that a reasonable investor may well have perceived there to be a significant difference between the fact that the agreement *could* be terminated by the USPS without cause and the fact that negotiations undertaken precisely to avoid Authentidate's breach of the agreement *had*, in fact, failed.

8

The SAC also alleges that several generic statements in Authentidate's SEC filings regarding sales levels were misleading, but the statements in question did not suggest that Authentidate's sales were robust, and information in the same filings makes clear that the company was earning minimal revenues from such sales. The SAC similarly alleges that statements Authentidate made in press releases and conference calls regarding its sales prospects were misleading. We affirm dismissal of these claims for the reasons given by the district court.

Finally, the SAC asserts that Authentidate had a particular duty, in connection with its February 2004 stock offering, to reveal that its sales levels were exceedingly low and that it was in serious danger of failing to meet the first revenue metric in July 2004. The district court dismissed this claim on the ground that statements in February 2004 regarding sales levels and satisfaction of revenue metrics targeted for July 2004 would have been speculative and immaterial. We agree that because Authentidate had no duty to publicly disclose the terms of its agreement with the USPS, the fact that its sales revenues were low relative to those terms was not material information five months before the date of the first metric.

Accordingly, we also affirm the district court's dismissal of the claims against defendants Botti and Bunt in connection with the individual stock holdings they sold in late 2003. Because the district court did not address the individual defendants' liability under any of the other theories presented in the SAC, including liability for individual misstatements and omissions or liability for those attributable to them under the group pleading doctrine, we vacate and remand to allow the district court to consider those claims

in light of our conclusions in this order. By the same token, in the event that Authentidate's liability for primary violations is properly established, we leave it to the district court to consider ISBI's claims for control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is hereby **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk