23-0619-cv
*McCarthy et al. v. Bank of America et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

LISA MCCARTHY, AN INDIVIDUAL, MAD TRAVEL, INC., A/K/A TRAVEL LEADERS, VALARIE JOLLY, AN INDIVIDUAL, WILLIAM RUBINSOHN, ON BEHALF OF THEMSELVES AND THOSE SIMILARLY SITUATED, DBA RUBINSOHN TRAVEL, JOHN NYPL, GO EVERYWHERE, INC., A CORPORATION,

        *Plaintiffs-Appellants*,

       v.                                              23-0619-cv

BANK OF AMERICA, N.A., JPMORGAN CHASE & CO., BANK OF AMERICA CORPORATION, HSBC BANK (USA), N.A., HSBC NORTH AMERICAN HOLDINGS INC., CITIGROUP, INC., UBS AG, BARCLAYS PLC, JPMORGAN CHASE BANK, N.A., CITICORP, CITIBANK, N.A., BARCLAYS CAPITAL, INC., ROYAL BANK OF SCOTLAND, PLC,

*Defendants-Appellees,*

HSBC FINANCE CORPORATION, ROYAL
BANK OF SCOTLAND, JPMORGAN CHASE
BANK, N.A., HSBC HOLDINGS PLC,

*Defendants.*

---

FOR PLAINTIFFS-APPELLANTS:

JOSEPH M. ALIOTO, SR., Alioto Law Firm, San Francisco, California.

FOR DEFENDANTS-APPELLEES:

TANSY WOAN (Boris Bershteyn, *on the brief*) Skadden, Arps, Slate, Meagher & Flom LLP New York, New York, *for* JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

Adam Selim Hakki, Jeffrey Jason Resetarits, Richard F. Schwed, Shearman & Sterling LLP, New York, New York, *for* Bank of America Corporation and Bank of America, N.A.

Matthew A. Schwartz, Christopher J. Dunne, Mark A. Popovsky, Sullivan & Cromwell LLP, New York, New York, *for* Barclays PLC and Barclays Capital, Inc.

Andrew A. Ruffino, Covington & Burling LLP, New York, New York, *for* Citigroup, Inc., Citicorp, and Citibank, N.A.

J. Matthew Goodin, Julia C. Webb, Locke Lord LLP, Chicago, Illinois, Roger B. Cowie, Locke Lord LLP, Dallas, Texas, *for* HSBC Bank (USA), N.A. and HSBC North American Holdings Inc.

Paul S. Mishkin, Davis Polk & Wardwell LLP, New York, New York, *for* Royal Bank of Scotland, plc.

Eric J. Stock, Seth M. Rokosky, Gibson, Dunn & Crutcher LLP, New York, New York, *for* UBS AG.

2

Appeal from a judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on March 30, 2023, is **AFFIRMED**.

This appeal arises from the alleged manipulation of the foreign currency exchange ("FX") market in euros and dollars.[1] In this putative class action, four individuals and their travel businesses ("Plaintiffs") seek to recover damages for alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.[2] Plaintiffs appeal the district court's entry of summary judgment in favor of Defendants,[3] and its denial of their motion for class certification.

We review the district court's grant of summary judgment *de novo*. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014). In doing so, we "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Ne. Rsch., LLC v. One Shipwrecked Vessel*, 729 F.3d 197, 207 (2d Cir. 2013) (internal quotation marks and citation omitted). We assume the parties' familiarity with the underlying facts, procedural

---

[1] As we have previously explained, "FX trading takes place in currency pairs, where one individual or entity sells a certain amount of one country's currency to another individual or entity that purchases that currency with a certain amount of another country's currency. The mechanism for pricing in the FX market is known as the 'exchange rate,' 'rate,' or 'price,' which essentially represents the amount of one specific currency that a market participant can be paid in exchange for another specific currency." *United States v. Aiyer*, 33 F.4th 97, 106 (2d Cir. 2022) (footnote and record citation omitted).

[2] Plaintiffs also sued under the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, *et seq.* Because Plaintiffs have not challenged the dismissal of this claim on appeal, they have abandoned it. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

[3] Defendants are Bank of America, N.A., Bank of America Corporation, Barclays Capital, Inc., Barclays PLC, Citibank, N.A., Citicorp, Citigroup, Inc., HSBC Bank (USA), N.A., HSBC North American Holdings Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Royal Bank of Scotland, plc, and UBS AG ("Defendants").

history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.[4]

## I. Plaintiffs Nypl and Rubinsohn

The district court granted summary judgment with respect to individual plaintiffs John Nypl and Bill Rubinsohn and their businesses because they did not make any qualifying purchase, that is, a "physical purchase in any U.S. branch of any Defendant bank." *Nypl v. JPMorgan Chase & Co.*, No. 15-cv-9300 (LGS), 2023 WL 2712214, at *2 (S.D.N.Y. Mar. 30, 2023). In a ruling more than four years earlier, the district court denied Plaintiffs' motion for leave to file a fourth amended complaint to explicitly add credit, debit, or ATM card transactions, as well as subsequent wire transfers, as qualifying purchases. The district court held that, based on Plaintiffs' pleadings, Plaintiffs' claims are limited to "transactions involving foreign currency purchased with U.S. Dollars and physically received at Defendants' retail branches within the United States." 2022 WL 819771, at *1 (S.D.N.Y. Mar. 18, 2022) (internal quotation marks and citation omitted). "We generally review a district court's decision to permit or deny leave to amend a complaint for abuse of discretion, keeping in mind that leave to amend should be freely granted when justice so requires." *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015) (internal quotation marks and citation omitted). Plaintiffs argue that the district court erred in limiting their claims to the purchase of physical euros at a U.S. retail branch. We disagree.

Plaintiffs maintain that the third amended complaint's proposed definition of the putative class—namely, those "who *directly purchased* supracompetitive foreign currency"—permits the inclusion of debit or credit card transactions because those non-physical transactions are subsumed

---

[4] Because we affirm the district court's grant of summary judgment in favor of Defendants on all claims, we need not address Plaintiffs' challenge to the denial of class certification. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 101–02 (2d Cir. 2021) ("If none of the named plaintiffs may maintain this action on their own behalf, they may not seek such relief on behalf of a class." (quoting *Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir. 1976))).

4

by the plain meaning of the term "purchase." Joint App'x at 137 (emphasis added). This contention, however, is belied by Plaintiffs' previous representations to the district court. For example, in opposing Defendants' motion to transfer this case from the Northern District of California, Plaintiffs distinguished the instant case from other pending litigation related to the alleged conspiracy by explaining that they sought to represent consumers "who purchased foreign currency for dollars at their local banks." Dist. Ct. Dkt. No. 40 at 2. Later, when Defendants moved to stay the action pending settlements in a related case, Plaintiffs told the district court that members of their class "take physical delivery of foreign currency" in transactions involving "immediate delivery" of that foreign currency at "their local banks." Dist. Ct. Dkt. No. 99 at 3, 9–10. In short, the district court did not err in its reading of the third amended complaint and did not abuse its discretion in declining leave to amend a fourth time to add qualifying transactions that Plaintiffs had explicitly disclaimed as a matter of litigation strategy. *See Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (denying leave to amend complaint based on factual circumstances that plaintiff had earlier opportunity to assert, and where proposed amendment "would result in new problems of proof").

Therefore, because it is undisputed that neither Nypl nor Rubinsohn made a physical purchase of euros in any U.S. branch of Defendants' banks, the district court correctly determined that no reasonable jury could find that they made a qualifying transaction that forms the basis of the federal claims in the third amended complaint, and thus, summary judgment was warranted in favor of Defendants as to these Plaintiffs.

## II.    Plaintiffs McCarthy, Mad Travel, Jolly, and Go Everywhere, Inc.

As to the remaining Plaintiffs, the district court granted summary judgment to Defendants after finding that nothing in the record "provides a basis for the jury to decide in what direction

prices were distorted when Plaintiffs bought euros." *Nypl*, 2023 WL 2712214, at \*4. Plaintiffs argued that, because Defendants "admitted to a conspiracy that corrupted the FX Spot Market in its entirety by elimination of competition," they did not need to show that any particular plaintiff paid a supracompetitive rate on any given day of the relevant time period. Reply Br. at 5–6. The district court rejected that argument and held that the continuous nature of the alleged conspiracy— where traders employed by defendant banks engaged in "near daily conversations that, in certain instances[,] coordinated trading around" their illicit setting of benchmark rates—did not establish the requisite injury with respect to any individual plaintiff. *Nypl*, 2023 WL 2712214, at \*5 (internal quotation marks omitted). We agree.

To survive summary judgment on a claim of horizontal price fixing, a plaintiff must show that the conspiracy "caused injury to the plaintiff in the form of artificially inflated prices." *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 61 (2d Cir. 2012). To meet this requirement, Plaintiffs rely on Defendants' plea agreements as an admission of continuous price-fixing in the FX spot market. It is undisputed that these plea agreements establish that Defendants engaged in a "conspiracy to fix, stabilize, maintain, increase or decrease the price of, and rig bids and offers for, the euro/U.S. dollar ('EUR/USD') currency pair exchanged in the foreign currency exchange spot market ('FX Spot Market')." Joint App'x at 163. However, these admissions do not establish that Plaintiffs suffered an injury-in-fact in the form of artificially inflated prices. According to the plea agreements, at any given time, market makers sought to eliminate competition in the FX spot market in order to mitigate their own risk, and they did so in a variety of ways, including through the manipulation of the benchmark rates or abstention from certain trading behaviors to the benefit of co-conspirators. On some days, these efforts resulted in an inflated euro price against the dollar; at other times, the dollar was inflated against the euro. Given the nature of this market and alleged

6

conspiracy, to demonstrate an antitrust injury, a plaintiff must submit proof that she purchased euros on a particular date during the timeframe of the alleged conspiracy, and that she suffered harm as a result of that transaction.

The district court properly concluded that Plaintiffs have offered no evidence from which a rational jury could find that they suffered actual harm as a result of a particular transaction in a manipulated market. For example, individual plaintiff Lisa McCarthy, who owns plaintiff business Mad Travel, Inc., testified that she made qualifying purchases of euros "on occasion" at retail branches of defendant JPMorgan Chase Bank, but that she did not have any business records or receipts to detail these transactions. Joint App'x at 2708. Although we can infer based on the plea agreements that the price of the euro was inflated at times, McCarthy offers no evidence to correlate any of her occasional transactions with inflated rates. Individual plaintiff Valarie Jolly, who owns plaintiff business Go Everywhere, Inc., testified that she purchased euros three-to-eight times per year at a retail branch of defendant JPMorgan Chase Bank, but she could identify only four specific purchases over the course of the relevant period: $1,400 worth of euros on September 23, 2011; $3,966.48 worth of euros on March 27, 2012; $686.40 worth of euros on October 4, 2012; and $1,001.98 worth of euros on September 30, 2013. Even on these four dates, however, Plaintiffs do not offer any evidence, expert or otherwise, that Jolly paid a supracompetitive rate.

In the absence of such proof, Plaintiffs urge us to approximate injury in one of two ways: by relying either on (1) the Department of Justice's estimation for the average effect of the conspiracy on the benchmark rates for the purposes of the related criminal cases, or (2) Plaintiffs' expert's "estimate of the effect of the conspiracy on the spread of the EUR/USD exchange rate in the FX Spot Market during the conspiracy period (2007-2013)." Reply Br. at 4 (internal quotation marks omitted). However, neither of these generalized estimations is probative as to whether

7

McCarthy or Jolly actually paid a supracompetitive price for euros on any given day in the relevant period. *See, e.g.*, *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 116 (2d Cir. 2018) (finding no actual injury where "[p]laintiffs do not even present evidence that they traded at 'artificial prices.'"). In sum, because these plaintiffs have not offered any evidence that they bought euros on days when the exchange rate was artificially inflated, or otherwise suffered injury as a result of the conspiracy, the district court properly granted summary judgment to the Defendants as to these plaintiffs.

*          *          *

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court