Rafael SOLAR, Plaintiff,

v.

Superintendent Paul ANNETTS, Down-
state Correctional Facility, et al.,
Defendants.

No. 08 Civ. 5747(WHP).

United States District Court,
S.D. New York.

March 16, 2010.

Rafael Solar, Collins, NY, pro se.

Frederick Hongyee Wen, Esq., Assistant Attorney General, Attorney General of the State of New York, New York, NY, for Defendants.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff *pro se* Rafael Solar ("Solar") brings this federal civil rights action against Paul Annetts ("Annetts"), the former Superintendent of Downstate Correctional Facility ("Downstate"), and several employees of Great Meadow Correctional Facility ("Great Meadow") and Upstate Correctional Facility ("Upstate").[1] Solar alleges inadequate medical treatment in violation of the Eighth and Fourteenth Amendments and retaliation in violation of the First and Fourteenth Amendments. Defendants move to dismiss any official-capacity claims pursuant to Fed.R.Civ.P. 12(b)(1), to transfer venue to the Northern District of New York (the "Northern District") pursuant to 28 U.S.C. §§ 1391(b), 1404(a), and 1406(a), and stay responsive pleading and discovery deadlines. Defendant Annetts also moves to dismiss all claims against him pursuant to Fed. R.Civ.P. 12(b)(6). For the following reasons, Annetts's motion to dismiss Solar's claims against him is granted. Defendants' motion to dismiss all official capacity claims and to transfer this action to the Northern District is granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the Court accepts the following allegations as true.[2]

---

1. The Clerk of the Court is respectfully directed to amend the official caption of this action to conform to the caption listed above.

2. Solar's Second Amended Complaint dated December 22, 2008 is the subject of this motion. The only change he made from his First Amended Complaint dated July 17, 2008 was

On September 8, 2006, Solar was transferred from Upstate in Franklin County to Downstate in Dutchess County. (First Amended Complaint dated July 17, 2008 ("First Am. Compl.") Attachment ("Attach.") at 1.) Solar arrived at Downstate with an order from Upstate that he be placed in "flat" tier housing—i.e., units accessible without stairs—because he was recovering from foot surgery. (Attach. at 1; First Am. Compl. Ex. A: Email dated Oct. 20, 2006 ("Oct. 20 Email").) Because there were no flat tiers at Downstate, Solar was placed in the prison hospital. (Oct. 20 Email.)

On September 11, 2006, Solar was moved without a doctor's order to a second-floor cell block. (Second Amended Complaint dated Dec. 22, 2008 ("Second Am. Compl.") at 3.) The next day, he fell down the stairs and injured his left shoulder, lower back, and left knee. (Attach. at 1.) Solar was taken to the emergency room at Putnam Hospital Center. When he was returned to Downstate, he claims that Downstate failed to follow the emergency room's directions. (Attach. at 1–2; First Am. Compl. Ex. C: Medical Chart for Rafael Solar dated Sept. 12, 2006.) On September 16, 2006, Solar was transferred to Great Meadow in Washington County. (Attach. at 2.)

On January 5, 2007, Dr. David Thompson ("Dr. Thompson"), Solar's doctor at Great Meadow, referred him to an orthopedist, who performed knee surgery on March 13, 2007. (Attach. at 2.) However, Great Meadow staff did not follow Dr. Thompson's recommendations for post-operative care. (Attach. at 4.) Solar alleges that he was subsequently diagnosed with back disc degeneration and muscle atrophy in his knee. (Attach. at 3; First Am.

Compl. Unnumbered Ex: Letter from Mitchell Rubinovich dated May 4, 2007.) Dr. Thompson ordered Steven Rowe ("Rowe"), Great Meadow's Deputy of Security, to provide accommodations for these injuries. (First Am. Compl. Ex. (5)5: Interdepartmental Communication dated May 23, 2007 & Ex. V: Interdepartmental Communication dated June 6, 2007.) Rowe did not enforce these orders. (Second Am. Compl. at 3.)

On July 6, 2007, Solar fell again and was admitted to the Great Meadow medical unit. (Attach. at 3.) However, because Tad Nesmith ("Nesmith"), a nurse, suspected Solar of "manipulative behavior," he was discharged the next day without an exam. (Attach. at 3.) Solar alleges Dr. Thompson forged documents stating Solar was discharged the same day. (Attach. at 3.) Solar filed a grievance on July 7, 2007 in connection with this incident. (First Am. Compl. Ex. CC: Inmate Grievance Complaint dated July 7, 2007.) He claims that medical personnel then retaliated against him by refusing him emergency sick call services. (Attach. at 4.)

On July 23, 2007, Dr. Thompson submitted a request that Solar again see an orthopedist. That request was denied and that same day, Solar was disciplined for suspected manipulative behavior. (Attach. at 4–5.) Dr. Thompson reiterated his order for accommodations. (Attach. at 4; First Am. Compl. Ex O5: Interdepartmental Communication dated Sept. 19, 2007.) According to Solar, Rowe did not carry out Dr. Thompson's order. (Attach. at 5.)

On November 13, 2007, Robert Lennox, a Great Meadow correction officer, allegedly assaulted Solar in retaliation for his grievances. (Attach. at 5–6.) Although he

to add Annetts. Solar failed to attach to the Second Amended Complaint the exhibits he attached to the First Amended Complaint.

However, this Court considers the attachments to the First Amended Complaint here.

repeatedly requested medical attention, Solar was denied proper care. (Attach. at 7.)

Following the commencement of this action, Solar was transferred from Great Meadow to Upstate on January 14, 2008. (Attach. at 8–9.) The next day, Upstate personnel issued a temporary permit for accommodations but refused to give Solar pain medication. (Attach. at 9–10; First Am. Compl. Ex. O5: Medical Permit dated Jan. 15, 2008.) On January 16, 2008, Solar grieved the denial of his pain medication. That grievance was denied. (Attach. at 9; First Am. Compl. Ex. 13: Superintendent determination dated Mar. 4, 2008.) Solar was examined on January 23, 2008 by Louise Tichenor ("Tichenor"), a physician's assistant. (Attach. at 9–10.) Despite Solar's medical history, Tichenor denied any accommodations. (Attach. at 10–11.) When Solar filed a grievance, Tichenor allegedly retaliated by moving Solar to a top bunk. (Attach. at 11.)

Solar alleges that his claims arising from events at Downstate, Great Meadow and Upstate are related because every time he had a medical problem, he was transferred to another facility, which refused to comply with the prior facility's orders-all pursuant to a policy permitting unconstitutional practices. (Attach. at 8.) Solar was later transferred from Upstate to Auburn Correctional Facility, where his medical needs were addressed. (Attach. at 12.) Solar is currently housed at Collins Correctional Facility ("Collins") in Erie County, New York.

## DISCUSSION

### I. Legal Standard

On a motion to dismiss, this Court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in the non-moving party's favor.

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir.2008). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991).

A *pro se* litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir.2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). "These liberal pleading rules apply with particular stringency to complaints of civil rights violations." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 293–94 (2d Cir. 2003). Accordingly, although Solar submitted only the barest of opposition to Defendants' motion, this Court finds his claims are not abandoned and evaluates the motion on the pleadings. *See Lipton v. Cty. of Orange, N.Y.*, 315 F.Supp.2d 434,

441

446 (S.D.N.Y.2004) (although courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed ... [a]pplication of this proposition is, however, tempered by [the court's] discretion").

## II. Personal Involvement of Annetts

 "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of N.Y.*, 579 F.3d 176, 184 (2d Cir.2009). A supervisor's personal involvement is established if:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (citation omitted). As such, "supervisor liability in a § 1983 action depends on a showing of personal responsibility, and cannot rest on *respondeat superior.*" *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003); *see also Iqbal*, 129 S.Ct. at 1948. Solar's claims against Annetts fail because he does not allege any facts regarding Annetts's involvement—indeed, he makes no mention of Annetts beyond naming him as a Defendant. *See Shomo*, 579 F.3d at 184 (dismissing claims against supervisors where plaintiff failed to allege their personal involve-

ment). Accordingly, this Court grants Defendant Annetts's motion to dismiss all claims against him pursuant to Rule 12(b)(6).

## III. Transfer of Venue

 Section 1391(b), which governs proper venue for federal question cases, provides as follows:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). "Even when venue is proper in the Southern District of New York, the Court may transfer an action pursuant to 28 U.S.C. § 1404(a)." *Blum v. Salomon*, No. 06 Civ. 3149(WHP), 2006 WL 3851157, at *3 (S.D.N.Y. Dec. 28, 2006). That section provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). "The burden of demonstrating the desirability of transfer lies with the moving party," who must "make a clear and convincing show-

ing that the balance of convenience favors defendants' choice." *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F.Supp.2d 203, 208 (S.D.N.Y.1998) (citing *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

■ The inquiry on a § 1404(a) motion to transfer is two-fold: first, "whether the action could have been brought in the proposed transferee forum"; and second, "whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Blum*, 2006 WL 3851157, at *3; *accord Orb Factory*, 6 F.Supp.2d at 208.

As to the first prong, Solar could have properly filed his action in the Northern District because five Defendants—all those who remain in this action—reside in the Northern District, and a "substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District. *See* 28 U.S.C § 1391(b)(1)-(2).

■ As to the second prong, courts weigh the following factors:

(1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight to be accord[ed] a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Capitol Records, Inc. v. MP3tunes, LLC*, No. 07 Civ. 9931(WHP), 2008 WL 4450259, at *5 (S.D.N.Y. Sept. 29, 2008); *accord Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F.Supp.2d 474, 477 (S.D.N.Y. 2006). "[T]here is no rigid formula for balancing these factors and no single one of them is determinative." *Am. Eagle*, 457 F.Supp.2d at 477.

■ Even when "giv[ing] due deference to the plaintiff's choice of forum," this Court finds that "the balance of convenience and justice weighs heavily in favor of [Defendants' proposed] forum." *Citigroup, Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000). The convenience of the parties and non-party witnesses is generally viewed as the most important factor, as it is specifically enumerated in the venue transfer statute. 28 U.S.C. § 1404(a); *see also Schoenefeld v. N.Y.*, No. 08 Civ. 3269(NRB), 2009 WL 1069159, at *2 (S.D.N.Y. Apr. 16, 2009). Here, all remaining Defendants reside in the Northern District. Moreover, Solar is currently incarcerated at Collins in the Western District of New York—which is closer to the Northern District than this District—meaning this critical factor weighs in favor of transfer. *See Schoenefeld*, 2009 WL 1069159, at *2. Documents and other evidence relevant to the actions of Defendants are also in the Northern District. To the extent Downstate documents may be relevant, they are "easily portable" because each facility that has housed Solar is part of the New York State Department of Corrections, and therefore this factor is "not a compelling consideration." *Am. Eagle*, 457 F.Supp.2d at 478.

As for the locus of the operative facts— "the site of events from which the claim arises," *Blum*, 2006 WL 3851157, at *4— all acts or omissions for which Defendants could be held liable occurred at Great Meadow and Upstate in the Northern District. *See United States v. Nature's Farm Prods., Inc.*, No. 00 Civ. 6593(SHS), 2004 WL 1077968, at *5 (S.D.N.Y. May 13, 2004) (transferring venue where locus of operative facts occurred mainly in transferee venue). Moreover, process is avail-

able in the Northern District to compel attendance of witnesses from Great Meadow and Upstate, and the Northern District is familiar with the governing law.

Where the only factor weighing against transfer is the plaintiff's choice of venue, "[t]hat is insufficient to keep the action before this Court when the remaining factors support a transfer." *Blum,* 2006 WL 3851157, at *5; *accord Shariff v. Goord,* No. 03 Civ. 7664(DAB), 2005 WL 2087840, at *7 (S.D.N.Y. Aug. 26, 2005). This Court therefore finds that, in the interests of justice as well as for the convenience of all parties, transfer of this action to the Northern District is warranted.

Accordingly, this Court grants Defendants' motion to transfer venue to the Northern District pursuant to 28 U.S.C. § 1404(a) and stays any responsive pleading and discovery deadlines pending scheduling by a judge of the Northern District.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss all claims against Annetts, to transfer venue to the Northern District of New York pursuant to 28 U.S.C. § 1404(a), and to stay responsive pleading and discovery deadlines is granted. Defendants' motion to dismiss official capacity claims against the remaining Defendants is denied as moot. The Clerk of the Court is directed to transfer this action to the United States District Court for the Northern District of New York.

SO ORDERED.