**DELTA AIR LINES, INC., Plaintiff,**

v.

**ASSOCIATION OF FLIGHT ATTENDANTS, CWA, Defendant.**

No. 10–CV–1129 (ENV)(VVP).

United States District Court, E.D. New York.

June 28, 2010.

Chris A. Hollinger, O'Melveny & Myers, San Francisco, CA, Jeffrey I. Kohn, Robert A. Siegel, Sloane Jacqueline Giddon, O'Melveny & Myers LLP, New York, NY, for Plaintiff.

Carmen R. Parcelli, Paul E. Knupp, Guerrieri, Claymon, Bartos & Parcelli, P.C., Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

VITALIANO, District Judge.

On March 12, 2010, plaintiff Delta Air Lines, Inc. ("Delta") filed this action

against defendant Association of Flight Attendants, CWA ("AFA"), a labor organization, to prevent AFA from pursuing grievance and arbitration proceedings under an asserted collective bargaining agreement. AFA now moves to transfer venue of this action to the District of Columbia, where another labor-related case between the same parties is currently pending. For the reasons set forth below, defendant's motion is granted.

### Background

#### I. The Airline Merger

This case arises out of the 2008 merger of Northwest Airlines, Inc. ("Northwest") into Delta. Prior to the acquisition, AFA was certified under the Railway Labor Act, 45 U.S.C. §§ 151 et seq. (the "RLA") as the collective bargaining representative of the Northwest flight attendants. As one fruit of that representation, those flight attendants became party to a collective bargaining agreement with Northwest (the "CBA"), which provided, in pertinent part, that a three member "System Board of Adjustment" would have jurisdiction to decide "disputes between any Flight Attendant covered [by the CBA] and [Northwest] growing out of grievances or out of the interpretation or application of any terms" of the CBA. (Declaration of Edward J. Gilmartin ("Gilmartin Decl.") Ex. 9, § 28.) The CBA further purported to "be binding upon any successor including, but not limited to, any merged company or companies, purchaser, assign . . . of [Northwest] which acquires ownership and/or control of all or substantially all of the equity securities and/or assets of [Northwest]." (Gilmartin Decl. Ex. 9,

§ 1.) By contrast, the pre-merger Delta attendants were not unionized and not party to a collective bargaining agreement.

■ Before the merger, both the Delta and Northwest pilots were separately represented by the Air Line Pilots Association ("ALPA"). After announcing its intention to acquire Northwest, Delta negotiated a new collective bargaining agreement with ALPA covering all of the pilots employed by the post-merger Delta. In November 2008, ALPA successfully applied for "single carrier" status with the National Mediation Board ("NMB") as the single unit bargaining agent for all Delta pilots.[1] Notably, the NMB granted single carrier status with respect to ALPA, but explicitly declined to review the status of AFA, as well as other unions certified to represent former Northwest employees, because the employees whom it represented did not request an NMB determination. (Gilmartin Decl. Ex. 4.) Although the AFA did request such a determination in July 2009, it formally withdrew its application in light of a proposed rule change by the NMB. As a result, the flight attendant representation issues arising from the Delta–Northwest merger have yet to be resolved by accord or otherwise.

#### II. The District of Columbia Litigation

In fall 2008, Delta began to consolidate its flight attendant seniority lists. In response, AFA filed a lawsuit in the district court for the District of Columbia, *Assoc. of Flight Attendants–CWA v. Delta Air Lines, Inc.*, 08–CV–2009 (D.D.C. Dec. 10, 2008), seeking a declaratory judgment that Delta's actions violated the RLA and was

---

1. "The NMB adjudicates representational disputes by first determining whether in fact the carriers have combined their operations so as to constitute a 'single carrier.' . . . If the NMB decides that the merger has created a 'single carrier,' it then addresses which bargaining agent will represent the class of employees." *Global Aero Logistics v. Air Line Pilots Ass'n, Int'l,* 08–CV–1845, 2008 WL 2437766, at *5, 2008 U.S. Dist. LEXIS 46621, at *12–*13 (E.D.N.Y. June 17, 2008) (internal citations omitted).

premature in light of the McCaskill–Bond statute, Public Law 110–161, Div. K, Title I, § 117, 121 Stat 1844 (Dec. 26, 2007), an enactment specifically addressing seniority integration in the airline industry. More to the point, AFA alleged that pursuant to both the RLA and McCaskill–Bond, Delta was not entitled to integrate seniority lists prior to an NMB finding that a single carrier exists and a determination of the bargaining representative for the combined unit of flight attendants. The case was consolidated with a nearly identical case brought by another labor organization against Delta and assigned to Judge Richard W. Roberts.

Currently pending before Judge Roberts is Delta's fully-briefed motion to dismiss the complaint for lack of subject matter jurisdiction, in which it argues that the relief sought by AFA would require that the court determine whether the merger created a single transportation system for representation purposes under the RLA, and define the post-merger representation status of Delta and Northwest flight attendants. Delta's position is that since the merger created a single transportation system, "AFA cannot lawfully claim prospective representation rights over only a portion of the flight attendants employed by the post-merger system." As the AFA complaint is "inextricably intertwined with" union representation issues, Delta reasons, the claim would "draw the [c]ourt into ... [a] representational dispute" within the exclusive jurisdiction that the RLA has vested in the NMB.[2] (Gilmartin Decl. Ex. 6.) Delta further notes, in its reply brief, that the AFA has "no basis whatever to claim to represent the interests of the pre-merger Delta employees whom they have never represented—but the remedy [AFA] seek[s] would directly affect those employees." (Gilmartin Decl. Ex. 8.) In response, AFA argues that: (1) NMB rules specified that AFA retained certification over the former Northwest flight attendants; (2) not all airline merger-related "labor relations issues are transformed into 'representation disputes' within the exclusive jurisdiction of the NMB"; and (3) its desired relief would not require the court to delve into those representation issues actually reserved for the NMB to decide. (Gilmartin Decl. Ex. 7.)

### III. *The New York Litigation*

The CBA includes a "Scope Clause", which provides that "[a]ll present and future cabin passenger service ... operating in aircraft operated by pilots on the Pilot System Seniority List of Northwest Airlines, Inc. shall be performed exclusively by the Flight Attendants on the Northwest Airlines, Inc. [seniority list]." (Gilmartin Decl. Ex. 9, § 1.) Although the Federal Aviation Administration issued a single operating certificate to Delta on December 31, 2009, the pre-merger Northwest and Delta flight attendants did not commingle operations, because the Northwest attendants were working under separate wages, benefits, and work rules pursuant to the CBA. In contradistinction, the pilots, without regard to their pre-merger employer, were integrating as provided for in Delta's agreement with ALPA.

AFA filed a grievance on March 4, 2010 based on the "Scope Clause" (the "Grievance") and requested expedited arbitration, demanding that Delta "cease and desist the integration of all [pilots] and restore the status quo ante (that the

---

2. "Under the [RLA], 45 U.S.C. §§ 151 [et seq.], representation disputes, including disputes over which union, if any, represents a class of employees, fall within the exclusive jurisdiction of the National Mediation Board." *Global Aero*, 2008 WL 2437766, at *5, 2008 U.S. Dist. LEXIS 46621, at *12.

Company shall schedule only per-merger [Northwest] flight attendants to work on aircraft flown only by pre-merger [Northwest] pilots)." (Declaration of Robert A. Siegel ("Siegel Decl.") Ex. 1.) Delta responded by filing this action, seeking declaratory and injunctive relief prohibiting AFA from pursuing the Grievance. Delta maintains that the subject of the Grievance affects the "work schedules and opportunities" of pre-merger Delta flight attendants whose representation has not been resolved by the NMB, as well as those of Delta's pilots who are represented by ALPA. (Compl. ¶¶ 22, 24.) Delta thus argues that the issues in the Grievance "are inextricably intertwined with and implicate representation issues within the exclusive jurisdiction of the NMB and beyond the jurisdiction of the System Board Procedure [set forth by the CBA]." (*Id.* ¶ 26.)

### Discussion

AFA now asks the Court to transfer venue to the District of Columbia, arguing primarily that litigating the two actions in the same forum will "conserve judicial resources ... [and] avoid the possibility that inconsistent judicial rulings may further complicate the already complex relationship between the parties." (Def.'s Br. at 1.)

### I. Legal Standard

Transfer of venue is controlled by 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *Solar v. Annetts*, 08–CV–5747, 707 F.Supp.2d 437, 441, 2010

WL 1253478, at *4, 2010 U.S. Dist. LEXIS 30386, at *10–*11 (S.D.N.Y. Mar. 16, 2010) (*quoting In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992)); *see Red Bull Assocs. v. Best Western Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir.1988) (discussing the "considerable discretion in the district court to adjudicate motions for transfer"). The burden generally falls on the moving party to make "a clear and convincing showing that a matter should be transferred." *McHale v. Citibank, N.A.*, 09–CV–6064, 2009 WL 2599749, at *5, 2009 U.S. Dist. LEXIS 74943, at *16 (S.D.N.Y. Aug. 24, 2009) (internal quotation marks omitted).

The parties do not dispute that Delta could have brought the current action in the District of Columbia. Therefore, the Court must decide whether transfer would promote convenience and fairness. In doing so, the Court may examine a number of factors, including: (1) plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and other physical evidence; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with governing law; and (9) judicial economy and the interests of justice. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir.2006) (internal quotation marks and citation omitted); *Scherillo v. Dun & Bradstreet, Inc.*, 684 F.Supp.2d 313, 318 (E.D.N.Y.2010); *McHale*, 2009 WL 2599749, at *5, 2009 U.S. Dist. LEXIS 74943, at *17. "There is no strict formula for the application of these factors, and no single factor is determinative." *Scherillo*, 684 F.Supp.2d at 318–19.

## II. Transfer To The District of Columbia Is Appropriate

### A. Delta's Choice of Forum

■ Delta is not headquartered in New York, nor has its cause of action arisen in New York. In such circumstances, a plaintiff's choice of forum is entitled to less deference. *See Legrand v. City of New York*, 09–CV–9670, 2010 WL 742584, at *2, 2010 U.S. Dist. LEXIS 19011, at *5 (S.D.N.Y. Mar. 3, 2010); *Colabufo v. Cont'l Cas. Co.*, 04–CV–1863, 2006 WL 1210919, at *5, 2006 U.S. Dist. LEXIS 28957, at *16 (E.D.N.Y. Apr. 27, 2006). Delta, as plaintiff, is still entitled to choose, and premises its venue selection on the basis that it "conducts substantial airline operations in this District at LaGuardia Airport and John F. Kennedy International Airport, and maintains a flight attendant base in this District" (Compl. ¶ 4), also noting that "many" of its flight attendants are domiciled in the Eastern District of New York. (Pl.'s Opp. at 15.) But, as AFA points out, there is no strong connection between this lawsuit and New York. Yet, "neither is there a compellingly strong connection between the facts and any other district . . . [because] [t]he alleged operative facts in this case relate to contracts performed throughout the entire United States." *Payless Shoesource, Inc. v. Avalon Funding Corp.*, 666 F.Supp.2d 356, 363 (E.D.N.Y.2009). Therefore, even affording Delta's choice less deference, the Court does not find that this factor weighs heavily in favor of granting transfer. *Id.*

### B. "Convenience" Factors

■ Several factors addressing convenience also do not weigh heavily in favor of transfer. First, although the convenience of witnesses "is typically regarded by courts as the most important factor in considering a motion to transfer pursuant to § 1404(a)", *AIG Fin. Prods. Corp. v. Public Util. Dist. No. 1*, 675 F.Supp.2d 354, 369 (S.D.N.Y.2009), AFA acknowledges that "few, if any, witnesses will be required," so this factor is "not as important in this case as it is generally in the transfer analysis." Similarly, AFA admits that the "availability of process" factor is "not relevant." (Def.'s Br. at 18–19.) Notwithstanding these concessions, AFA contends that one of its three contemplated witnesses—its general counsel, Edward Gilmartin—works at AFA headquarters in Washington, D.C., and therefore this factor weighs in its favor. But the short trip between the District of Columbia and New York by one party witness is hardly a substantial inconvenience tipping the scales in favor of transfer, particularly in light of the fact that the other two witnesses are traveling from Minneapolis.[3] *See AIG*, 675 F.Supp.2d at 369 ("Generally, the convenience of non-party witnesses is accorded more weight than that of party witnesses") (internal quotation marks omitted); *see, e.g.*, *Allen v. Devine*, 670 F.Supp.2d 164, 174 (E.D.N.Y.2009) ("Here, the Moving Defendants identify just one witness . . . who is a party to the case and who will be inconvenienced [but] as a party to the action, [his] inconvenience does not weigh heavily in favor of transfer.") For

---

3. Nor is the Court convinced that Gilmartin's testimony is particularly relevant or necessary. *See Herbert Ltd. Partnership v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y.2004). ("When assessing the convenience of witnesses, a court . . . must qualitatively evaluate the materiality of the testimony that the witnesses may provide."). AFA vaguely claims that Gilmartin has "knowledge of the handling of AFA's Scope Clause Grievance prior to this litigation and the on-going collective bargaining relationship," but it also claims that one of its proposed witnesses from Minneapolis, Peter Swanson, has the same general knowledge. (Def.'s Br. at 19.)

the same reasons, the Court determines that the "convenience" factors do not weigh in AFA's favor.

Cut from the same cloth, AFA acknowledges that the "relative means of the parties" is "not particularly relevant" here (Def.'s Br. at 19), and fails to even address the location of physical evidence. Finally, AFA admits that the factor regarding familiarity with governing law does not tilt in its favor because the Court is applying federal law—the RLA—which both courts are equally equipped to address. *Cf. Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 332 (E.D.N.Y.2006) ("Where, as here, the law to be applied is federal patent law, the [governing law familiarity] factor is neutral.").

## C. *Judicial Economy*

██ Although the equipoise on most factors would ordinarily sustain a plaintiff's choice of forum, there is yet another factor, and it is decisive here. AFA's motion actually turns on the relationship between this lawsuit and the action already pending in the District of Columbia. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir.1968); *see Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540

(1960). Therefore, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." [4] *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F.Supp.2d 124, 130 (E.D.N.Y.2004).

There can be little doubt that the current action is closely related to the action that has been pending in the District of Columbia for almost two years. Both lawsuits are between Delta and AFA, and both arise out of the labor disputes resulting from the Delta–Northwest merger. In both cases, AFA, based on its claimed continuing representation of the pre-merger Northwest flight attendants, contends it has an enforceable right to prevent, at least in part, integration of Delta and Northwest operations. In the District of Columbia, AFA hopes to halt integration of the flight attendant seniority lists, while in New York, the aim is to be free to proceed to arbitration in order to keep flight crews segregated by prior employer, and restore the status quo for the Northwest personnel it represented ante-merger.

More critically, as framed by Delta itself, both cases revolve around the same fundamental issue: whether the post-merger labor disputes are "inextricably intertwined" with representation issues within the exclusive jurisdiction of the NMB. To be sure, each litigation does involve certain distinct issues relating to federal statutes and labor contracts, but that is a

---

**4.** Delta erroneously argues that cases are only sufficiently related to merit transfer where they are "virtually identical" to one another. (Pl.'s Opp. at 13.) Of course, some cases have found transfer appropriate because two actions were virtually identical, *see, e.g., Rabbi Joseph*, 342 F.Supp.2d at 125, but the Court's discretionary analysis is guided by its determination whether consolidation of the cases

would promote judicial efficiency and avoid inconsistent results. *See Columbia Pictures Indus. v. Fung*, 447 F.Supp.2d 306, 309–10 (S.D.N.Y.2006) ("The interests of justice require that the cases be related, not identical.") (*quoting Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 167 (S.D.N.Y. 1992)).

far cry from Delta's argument that "each court is faced with entirely different legal issues." (Pl.'s Br. at 21.) Dispositively, and contrary to the conclusion that Delta urges, both cases involve the same core representational dispute: what right, if any, does AFA have to require Delta to honor the bargain Northwest had made with it?; or viewed from a different perspective, what is the extent, if any, of AFA's right of representation with respect to post-merger Northwest flight attendants? *See Bhd. Of Ry. & S.S. Clerks v. United Air Lines, Inc.*, 325 F.2d 576, 579 (6th Cir.1963) ("Looking through form to substance ... although the suit is cast in the form of an action under the law of contracts, it in fact involves a representation dispute."). As a matter of fact, in its motion to dismiss the action in the District of Columbia, Delta argues that core representational issues often masquerade as contract cases. Quoting from a D.C. Circuit opinion (in yet a still prior dispute between these same parties), Delta observes that the exclusive jurisdiction of the NMB "is no different if the union frames its action as a contract dispute arising from a successorship clause in a collective bargaining agreement." *See AFA v. Delta Air Lines, Inc.*, 879 F.2d 906, 912 (D.C.Cir.1989). The import is clear: litigation relating to the applicability of a past collective bargaining agreement to new corporate entities go hand and glove with representational issues.

Nonetheless, Delta presses further here that "there is simply no risk of inconsistent results in the two cases." (Pl.'s Opp. at 21.) Both courts, however, could make findings with respect to AFA's rights to represent employees of Delta that could conflict with one another. Emblematic of the shifting sands on which these actions

sit, in the District of Columbia action, Delta argues that AFA's "status as the representative of the pre-merger Northwest employees is now in question" (Gilmartin Decl. Ex. 8), and explains that if the action went forward, it would implicate a "determination that ... AFA continues to have representative status under the RLA." (Pl.'s Opp. at 20.) In the New York action, Delta conspicuously omits any contention that AFA is no longer the representative of the pre-merger Northwest attendants,[5] but it still requests that the Court find a representational issue that would preclude immediate resolution of the Grievance.

A potential inconsistency arises if Delta fails to persuade one of the courts that the NMB has exclusive jurisdiction over a dispute of fact or law that is elemental to the issue at bar in the respective courts. If Delta fails, for example, to persuade this Court, then arbitration will move forward on the basis that AFA still represents the pre-merger Northwest flight attendants, and any possible effects on other separately-represented or non-represented Delta employees cannot halt that process. However, if the District of Columbia court concludes that there exists a representational dispute, AFA's status as a representative of *anyone* is cast into doubt pending resolution by the NMB, which could make a finding inconsistent with this Court's finding. On the opposite side of the coin, if Delta fails to persuade the District of Columbia court that there exists such a representational dispute, Judge Roberts will be free to determine that AFA has retained its representational rights with respect to certain Delta flight attendants post-merger. Then, if this Court found that AFA's demand for relief under the CBA (arbitration of the dispute) could not go forward until it was determined by the

---

**5.** In fact, AFA alleges in its counterclaim that Delta has continued to apply the terms of the CBA covering Northwest attendants. (*See* Answer & Countercl. ¶ 8.)

NMB that AFA had representational rights, AFA faces the plainly untenable prospect of having different representational status in the two judicial forums. Clearly, then, refusing to transfer the New York action would risk triggering disparate resolution of the potential common questions in the course of resolving the specific (and different) causes advanced in each forum.[6]

After review of the pleadings and motion papers in the two lawsuits, the Court believes that the District of Columbia and New York actions are sufficiently interrelated that the interests of justice and judicial economy demand that they be decided in the same forum, by one court familiar with the various legal and factual issues, and responsible for the resolution of all of them. With a dispositive motion fully briefed and submitted there, and other labor-related claims of other labor organizations involving the aftermath of the Northwest–Delta merger joined there, the District of Columbia court is in the best position to sort out the nuanced arguments of the parties, and arrive at decisions that ensure consistent results in the two cases in the most expedient, efficient and economical manner.

### Conclusion

For the foregoing reasons, defendant's motion to transfer venue to the District of Columbia is granted. Any other pending requests for relief in this action are denied with leave to renew in the transferee court.

The Clerk of the Court is directed to transfer this case to the United States District Court for the District of Columbia and to close this docket.

SO ORDERED.

---

**6.** Compounding the confusion, AFA also takes positions in the two lawsuits that are not easy to reconcile: In the District of Columbia action, AFA argues that Delta is not entitled to move forward with its flight attendant integration efforts *without* a prior determination of the NMB with respect to its representation rights. Yet, in New York, AFA believes that it can move forward with its Grievance against integration of pilot crews *without* such an NMB determination.