**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| P.C. CONNECTION, INC. d/b/a CONNECTION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2020-0869-JTL |
| SYNYGY LTD., SYNYGY LLC, SYNYGY PTE LTD., OPTYMYZE PTE LTD., OPTYMYZE LLC, and MARK A. STIFFLER, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION**

Date Submitted: December 22, 2021
Date Decided: January 10, 2022

Daniel A. Griffith, WHITEFORD TAYLOR & PRESTON LLC, Wilmington, DE; *Attorney for Plaintiff P.C Connection, Inc. d/b/a Connection.*

Synygy Ltd., Synygy LLC., Synygy PTE Ltd., Optymyze Pte Ltd., Optymyze LLC, and Mark A. Stiffler, *Defendants*.

**LASTER, V.C.**

The court previously entered default judgments against the defendants. Those judgments established liability, but they did not award relief. Accordingly, they qualified as judgments in the colloquial sense, but they were not yet final judgments.

The plaintiff has moved to amend its complaint to add a new claim against two new entity defendants. Because the default judgments were not yet final judgments, the plaintiff properly invoked Court of Chancery Rule 15(a).

Under Rule 15(a), leave to amend is freely given. But that does not mean leave to amend always will be given. When a court has entered a default judgment that has not yet become final, a court must consider carefully any amendment that would include new or different factual allegations against the defaulted defendant or change the claims against that defendant. The entry of the default judgment means that the well-pled allegations in the complaint are established as true as to the defaulted defendant and that the defaulted defendant is liable on the claims against it. Permitting an amendment that would change the factual allegations or the claims likely would require vacating the default judgment, because a defendant might not have defaulted if the defendant knew that a particular factual allegation would be deemed true or a different claim had been asserted. Leaving the default judgment in place would deny due process to the defaulted defendant by permitting the simultaneous filing of a claim and the entry of judgment on that claim without the defendant having an opportunity to respond.

In this case, the plaintiff does not seek to assert new claims or change the nature of the complaint's factual allegations against the already defaulted defendants. The plaintiff

seeks to assert related claims against two new entity defendants. Those entities will have an opportunity to respond. This decision therefore grants the plaintiff's motion.

## I.     FACTUAL BACKGROUND

Plaintiff P.C. Connection ("Connection") is a publicly traded Delaware corporation with its principal place of business in Merrimack, New Hampshire. Connection sells custom computer systems and services to businesses and government agencies in the United States. Connection has a sales force of approximately 1,100 employees that it compensates using incentive-based compensation plans.

Defendant Mark A. Stiffler controls a business that provides a software platform for managing compensation plans (the "Compensation Platform"). Stiffler conducts his business through a complex, opaque, and frequently changing mélange of entities that this court has referred to collectively as the "Stiffler Organization." The entity defendants are part of the Stiffler Organization.

In 2013, Connection contracted with the Stiffler Organization to use the Compensation Platform. In 2018, however, Stiffler began demanding that Connection pay fees far greater than those specified in the governing contracts. In 2019, Stiffler tried to coerce Connection to pay the higher fees. Knowing that the Compensation Platform was mission critical software for Connection, Stiffler threatened to cut off access if Connection did not capitulate to his demands.

Connection filed this action to obtain an expedited determination of its rights. At the outset of the case, Connection sought a temporary restraining order to ensure that the Compensation Platform would remain available during the pendency of the litigation. The

2

court entered a temporary restraining order to maintain the status quo. Dkt. 9 (the "Status Quo Order"). The court also scheduled an expedited hearing to determine whether the order should be converted into a preliminary injunction.

The Status Quo Order required that the Stiffler Organization "not discontinue or materially reduce services provided to [Connection] as those services were in use on September 30, 2020, until December 1, 2020, or the Court's ruling on [Connection's] Motion for Preliminary Injunction, whichever comes first." *Id.* The Stiffler Organization thus had to preserve Connection's access to the Compensation Platform.

On November 20, 2020, the court held a hearing on Connection's application for a preliminary injunction. Dkt. 67. The court took the matter under advisement. The court noted that it had several matters to attend to and informed the parties that the Status Quo Order would remain in effect until the court issued its ruling. *Id.* at 53; *see* Dkt. 63. The court thus modified the Status Quo Order to eliminate the December 1 expiration date, causing the Status Quo Order to remain in effect until the court's ruling.

On Christmas Eve, the Stiffler Organization terminated Connection's access to the Compensation Platform. That act facially violated the Status Quo Order, and the court subsequently found the defendants to be in contempt. To induce the defendants to restore access, the court imposed a coercive sanction on the defendants of $50,000 per day until access to the Compensation Platform was restored. Dkt. 76.

On January 7, 2021, the court issued a decision granting Connection's motion for a preliminary injunction. *P.C. Connection, Inc. v. Synygy Ltd.* (*Injunction Decision*), 2021 WL 57016 (Del. Ch. Jan. 7, 2021). The decision converted the Status Quo Order into a

3

preliminary injunction that would remain in effect until the earlier of either the final disposition of this action or March 31, 2021. The court determined that by that date, Connection would have had a reasonable period to transition to a new provider of compensation services and minimize potential losses. After that point, an order requiring access to the Compensation Platform would no longer be necessary.

The defendants still did not restore Connection's access to the Compensation Platform. Connection therefore moved for additional sanctions. Dkt. 80. By order dated January 15, 2021, the court directed the defendants to restore Connection's access to the Compensation Platform by 12:00 p.m. on January 22, 2021. Dkt. 86. The court held that if the defendants did not restore Connection's access by the deadline, then the accrued coercive sanction of $850,000 would convert into a judgment in favor of Connection, with payment due in full by January 29, 2021. The court also put the defendants on notice that if they did not restore access, then the court would entertain a motion by Connection for default judgment.

The defendants failed to restore Connection's access by the court-ordered deadline. On January 27, 2021, Connection moved for the entry of judgment by default. Dkt. 90.

By order dated May 11, 2021, the court entered judgment by default against the original five entity defendants as to Counts I–VIII of the complaint. Dkt. 101 (the "Entity Default Judgment"). The Entity Default Judgment only addressed the issue of liability. It expressly did not address the issue of damages or whether other remedies were appropriate. *See id.* ¶ 25. Among other things, the court found that "the record supports a meritorious claim for piercing the veils of the entity defendants." *Id.* ¶ 19(d). The court noted that

4

"Stiffler has shuffled his entities to avoid his legal obligations," "has done so in a manner bearing hallmarks of fraud, which has worked injustice on third parties," and "has treated his entities as his alter egos and instrumentalities." *Id.*

The Entity Default Judgment did not grant Connection's request for a default judgment against Stiffler. The court noted that there was no record of Connection having served Stiffler with process, and Connection had not presented any authority as to whether service of process was a prerequisite to a default judgment entered as a sanction for the contumacious violation of a court order.

In response to the court's observation, Connection filed a supplemental memorandum of law providing authority for the proposition that service on Stiffler was not a prerequisite to the entry of default judgment under the circumstances in this case. Dkt. 104 at 2. By order dated June 25, 2021, the court entered default judgment against Stiffler on Counts I–VIII of the complaint. Dkt. 113 (the "Stiffler Default Judgment"). The Stiffler Default Judgment also only addressed the issue of liability. It did not address the issue of damages or other remedies.

On October 6, 2021, Connection moved for leave to file an amended complaint under Court of Chancery Rule 15(a). Dkt. 114. The proposed pleading would "add one additional count seeking declaratory relief in the form of [reverse] veil-piercing against two new defendants, Old Gulph Farm Developers LLC and Elverta Washington Square LLC." *Id.* ¶ 2. Connection averred that it had not known about these entities before the litigation and that both were believed to be a part of the shifting admixture of entities that Stiffler used to evade his legal obligations. *Id.* ¶ 4. Connection also noted that this court

5

had only recently recognized reverse veil piercing as a cognizable remedy. *Id.* ¶ 6 (citing *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 700 (Del. Ch. 2021)).

The court denied the motion without prejudice, noting that Connection had not made any effort to address how the entry of a default judgment affected the ability of a party to file an amended complaint under Rule 15(a). Dkt. 115. Observing that it could be problematic to amend a complaint after judgment had been entered, the court stated that more authority and explanation would be needed before the court could grant the motion. On December 22, 2021, Connection renewed its motion. Dkt. 119.

## II.    LEGAL ANALYSIS

Connection's application raises two questions. First, can Connection rely on Rule 15(a) to amend its complaint even after obtaining the Entity Default Judgment and the Stiffler Default Judgment (jointly, the "Default Judgments")? Second, does Connection's proposed amendment meet the standard for filing an amendment under Rule 15(a), taking into account the existence of the Default Judgments?

### A.    Whether Connection Can Rely On Rule 15(a)

Court of Chancery Rule 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, the party may so amend it any time within 20 days after it is served." Ct. Ch. R. 15(a). In all other circumstances, "a party may amend the party's pleading only by leave of Court or by written consent of the adverse party." *Id.*

6

Leave to amend should be "freely given when justice so requires."[1] The liberal granting of motions to amend recognizes that pleadings are not an end in themselves, but rather "designed to assist the adjudication of a dispute on the merits of the claim." Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 4.07[a][1], at 4-29 (2d ed. & Dec. 2019 Supp.).

Once judgment has been entered, however, the proceedings before the trial court have come to an end.[2] At that point "the filing of an amendment cannot be allowed until

---

[1] *Id.* Court of Chancery Rule 15(aaa) creates an exception to the general rule. Under Rule 15(aaa), if a party confronts a motion to dismiss under Court of Chancery Rules 12(b)(6) or 23.1 and chooses not to amend its complaint before the time its answer is due, then any order granting the motion to dismiss "shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances." Ct. Ch. R. 15(aaa). By necessary inference, "Rule 15(aaa) requires a plaintiff that wishes to amend its complaint in response to a motion to dismiss to file its amended complaint before responding to the motion to dismiss." *E. Sussex Assocs., LLC v. W. Sussex Assocs., LLC*, 2013 WL 2389868, at *1 (Del. Ch. June 3, 2013). A plaintiff that chooses to stand on its pleading and respond to the motion must survive pleading-stage analysis on the basis of that complaint; he is not entitled to move for leave to amend under the liberal standard of Rule 15(a). Doubtless in a world of infinite possibilities there is some set of circumstances where leave would be granted, but the test closely would track the standard that Rule 15(aaa) imposes for a dismissal without prejudice.

[2] "Judgment" in this context is a technical term referring to an order giving rise to a right of appeal, generally meaning a final judgment disposing of a case. Ct. Ch. R. 54(a) ("'Judgment' as used in these Rules includes any order from which an appeal lies."). It does not refer to a decision or ruling, nor does it refer to an interlocutory order. *See* 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2651, Westlaw (4th ed. database updated Apr. 2021) ("The terms 'decision' and 'judgment' are not synonymous under the federal rules. The decision consists of the court's findings of fact and conclusions of law; the rendition of judgment is the pronouncement of that decision and the act that gives it legal effect."). *Compare, e.g.*, Ct. Ch. R. 59(f) (contemplating a motion for reargument after the issuance of an "opinion" or "decision"), *with* Ct. Ch. R.

the judgment is set aside or vacated under Rule 59 or Rule 60." 6 Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 1489, Westlaw (3d ed. database

updated Apr. 2021). Another leading treatise describes the same practice:

> After a court dismisses an action and enters a final judgment, a plaintiff's ability to amend, whether "as a matter of course" or even by leave of court, is subject to limitations on the remedies available after judgment. Once a final judgment has been entered, the district court lacks power to rule on a motion to amend unless the party seeking leave first obtains relief under Rule 59(e) or 60.

3 James Wm. Moore et al., *Moore's Federal Practice* § 15.13[2], at 15-22 (3d ed. 2021).[3]

---

59(e) (contemplating a motion to alter or amend "the judgment"), *and* Ct. Ch. R. 60(a) (contemplating relief from a "judgment" or "order"). Under the Federal Rules of Civil Procedure, Rule 58 governs the entry of judgments and provides detailed instructions regarding when and how judgment is entered. The Court of Chancery rules do not contain anything similar to Federal Rule of Civil Procedure 58. In its entirety, Court of Chancery Rule 58 states that "[t]he order of the Court shall constitute the judgment of the Court." Ct. Ch. R. 58. That laconic and vague statement can engender confusion about when an order constitutes a judgment.

[3] Federal Rule of Civil Procedure 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Except for the time period for filing the motion, Court of Chancery Rule 59(e) is substantively identical: "A motion to alter or amend the judgment shall be served not later than 10 days after the entry of the judgment." Ct. Ch. R. 59(e). Federal Rule of Civil Procedure 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Court of Chancery Rule 60(a) likewise provides that "[c]lerical mistakes in judgments, order or other parts of the record and errors therein arising from oversight or omission may be corrected by the Court." Ct. Ch. R. 60(a). Federal rule of Civil Procedure 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for" six reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

In a recent decision, the Delaware Supreme Court discussed and endorsed this general framework. *See generally Lenois v. Sommers as Tr. for Erin Energy Corp.*, 2021 WL 5860672, at \*11–13 (Del. Dec. 9, 2021). Giving priority to Rules 59(e) and 60 after judgment has been entered promotes the finality of judgments and encourages the efficient processing of litigation. *See Sherman v. State Dep't of Pub. Safety*, 2017 WL 1900268, at \*5 n.37 (Del. Super. May 8, 2017); Wolfe & Pittenger, *supra*, § 4.09[d][1], at 4-47. By

---

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Court of Chancery Rule 60(b) is substantively and linguistically similar, and it also provides for relief "from a final judgment, order, or proceeding" for six reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence;
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(6) any other reason justifying relief from the operation of the judgment.

Ct. Ch. R. 60(b). The Federal Rules of Civil Procedure require that a Rule 60(b) motion "be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). Court of Chancery Rule 60(b) does not impose any timing restrictions.

imposing a heavy burden on the movant, these rules also reflect a judicial effort to "prevent[] litigants from resurrecting claims on which they have lost." *Bldg. Indus. Ass'n of Superior Cal. v. Norton*, 247 F.3d 1241, 1245 (D.C. Cir. 2001).

Under this framework, once a final judgment has been entered, the more restrictive rubrics of Rules 59(e) and 60 take precedence over the more liberal standard in Rule 15(a). *See* 6 Wright & Miller, *supra*, § 1489. As a result, "[o]rdinarily post[-]judgment amendment of a complaint under Rule 15(a) requires reopening of the judgment pursuant to Rule 59(e) or 60(b)." *Norton*, 247 F.3d at 1245. Put differently, "once a final judgment has been entered, a court cannot permit an amendment unless the plaintiff 'first satisf[ies] Rule 59(e)'s more stringent standard' for setting aside that judgment."[4] Procedurally, the

---

[4] *Ciralsky v. C.I.A.*, 355 F.3d 661, 673 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)); *see Atkinson v. Middlesex Cnty.*, 610 F. App'x 109, 112 n.6 (3d Cir. 2015) (applying Federal Rule of Civil Procedure 60 and not Federal Rule of Procedure 15 because "a final order dismissing [the plaintiff's] case had been entered"); *Walsh v. Quinn*, 327 F. App'x 353, 356 (3d Cir. 2009) (per curiam) ("'[A]lthough Rule 15 vests the District Court with considerable discretion to permit amendment "freely . . . when justice so requires," the liberality of the rule is no longer applicable once judgment has been entered. At that stage, Rules 59 and 60 govern the opening of final judgments,' and amendment is not allowed unless the judgment is set aside or vacated under one of those rules." (quoting *Ahmed v. Dragovich*, 297 F.3d 201, 207–08 (3d Cir. 2002) (citations omitted))); *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) ("If made subsequent to the entry of judgment, such requests [for leave to amend], whatever their merit, cannot be allowed unless and until the judgment is vacated under, say, Fed. R. Civ. P. 60." (citing 6 Wright & Miller, *supra*, § 1489)); *Ahmed*, 297 F.3d at 207 ("But if the [district court's] order was a final judgment, [the plaintiff] could not use Rule 15 to amend the complaint.").

There is some tension between the majority rule and *Foman v. Davis*, 371 U.S. 178 (1962). In *Foman*, the Supreme Court of the United States held that a district court abused its discretion by prioritizing Rule 59(e) over Rule 15(a) after it had granted a motion to dismiss the plaintiff's complaint. The Supreme Court held that the district court should

plaintiff must invoke Rule 59(e) or 60 before moving for leave under Rule 15(a). Precedent

in this court supports that approach, although there are rulings where the court proceeded

differently.[5]

have considered and approved the amendment under Rule 15(a). The Supreme Court did not discuss the more restrictive requirements of Rule 59(e). In the ensuing sixty years, however, the majority rule has prioritized Rules 59(e) and 60 under comparable circumstances. Under the current majority consensus, giving priority to Rule 15(a) in these settings would render meaningless the higher standards in Rules 59(e) and 60. *See, e.g.*, *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) ("It is well established that '[a] party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b) . . . .', '[o]therwise . . . [the] liberal amendment policy of Rule 15(a) [would] be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation'" (first quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); then quoting *Williams v. Citigroup Inc.*, 659 F.3d 208. 213 (2d Cir. 2011))).

   [5] *See Grobow v. Perot*, 1988 WL 127094, at *1 (Del. Ch. Nov. 25, 1988) (deciding a plaintiffs' motions under Rule 60(b)(2) and Rule 15(a) following "a judgment dismissing th[e] consolidated actions," and noting that the plaintiffs "submit[ted] that in the interests of justice they should be allowed to file the second amended complaint and, as a necessary predicate, to have the judgment of dismissal vacated"); *see also Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2018 WL 1254958, at *2–3 (Del. Ch. Mar. 12, 2018) (declining to address a request to amend a complaint under Court of Chancery Rule 15(aaa) where the plaintiffs "failed to carry their burden under Rule 60(b)(2)" and could not "obtain relief under Rule 60(b)(6)"). *But see Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs., Inc.*, 2008 WL 2133417 (Del. Ch. May 21, 2008) (deeming post-trial decision to be a final judgment for purposes of evaluating post-judgment amendment to complaint, but analyzing motion to amend under Rule 15(a) rather than Rules 59(e) or 60; denying motion under more lenient standard of Rule 15(a)); *Litman v. Prudential-Bache Props., Inc.*, 1992 WL 94369 (Del. Ch. Apr. 29, 1992) (granting motion to amend under Rule 15(a) and rejecting defendants' argument to apply Rule 59(e), despite prior decision in *Litman v. Prudential-Bache Properties, Inc.*, 611 A.2d 12, 17 (Del. Ch. 1992), which granted motion to dismiss under Rule 23.1 and directed that it was "ORDERED that plaintiffs' complaint in this action is DISMISSED for failure to state a claim for which relief can be granted."); Some variation is to be expected as courts approach individual cases, guided by the overarching mandate that the rules of civil procedure are to "be

These authorities make a persuasive case that Rule 15(a) remains available until after the entry of a final judgment. The next question is whether the Default Judgments in this case constituted a final judgment.

Under Delaware law, "[a] final judgment is generally defined as one which determines the merits of the controversy or the rights of the parties and leaves nothing for future determination or consideration." *Showell Poultry, Inc. v. Delmarva Poultry Corp.*, 146 A.2d 794, 796 (Del. 1958). "An order is deemed final and appealable if the trial court has clearly declared its intention that the order be the court's 'final act' in disposing of all justiciable matters within its jurisdiction." *Bush v. Reyes*, 2001 WL 760827, at *1 (Del. May 25, 2001) (TABLE). When a party has sought money damages, "settlement of the amount due is a condition precedent to the finality of a judgment." *J.I. Kislak Mortg. Corp. of Del. v. William Matthews, Builder, Inc.*, 303 A.2d 648, 650 (Del. 1973)). "In short, a final judgment is one that determines all the claims as to all the parties." *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 579 (Del. 2002).

These standards apply equally to default judgments: "To be final, entry of a default judgment must not only determine liability but determine relief as well." 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3914.5, Westlaw (2d ed. database updated Apr. 2021). Applying this rule, the Delaware Supreme Court has held that a default judgment was not a final judgment where it "determine[d] liability but d[id]

---

construed and administered to secure the just, speedy and inexpensive determination of every proceeding." Ct. Ch. R. 1.

not fix the amount of damages." *Am. Reliance Ins. Co. v. Meyer*, 1991 WL 165561, at *1 (Del. 1995) (TABLE).

Under these principles, the Default Judgments were not final judgments. Those orders established liability, but they did not determine the appropriate relief. In particular, the orders did not award an amount of monetary damages. Instead, the court directed the parties to schedule an evidentiary hearing so that the court could quantify the components of the damages award. *See* Dkt. 101 ¶ 25; Dkt. 113. Connection therefore properly invoked Rule 15(a), notwithstanding the entry of the Default Judgments.

**B.** **Whether Connection Has Satisfied The Requirements of Rule 15(a)**

Having determined that Connection properly relied on Rule 15(a), the next question is whether Connection has made the showing necessary to amend its complaint under that rule. "In the absence of undue prejudice, undue delay, bad faith, dilatory motive or futility of amendment, leave to amend should be granted." *Cantor Fitzgerald, L.P. v. Cantor*, 1999 WL 413394, at *2 (Del. Ch. June 15, 1999). The principal consideration is undue prejudice, and a court "should freely grant leave to amend unless amendment would cause serious prejudice to the opposing party." Wolfe & Pittenger, *supra*, § 4.07[a][1], at 4-29; *accord Kirby v. Kirby*, 1989 WL 111213, at *4 (Del. Ch. Sept. 26, 1989) ("Amendments to the pleadings are liberally allowed unless serious prejudice to the opposing party will result."). "Serious prejudice requires a showing of more than mere inconvenience or delay, particularly if a plaintiff alleges that a defendant withheld necessary information." Wolfe & Pittenger, *supra*, § 4.07[a][2], at 4-30.

13

The amendment in this case will not inflict any prejudice on either the existing defendants or the proposed defendants, much less the type of serious prejudice that would be necessary to deny the motion. As to the existing defendants, Connection does not seek to add new claims. Connection also does not seek to introduce any factual allegations that would be deemed true as a result of the defaults. *See Deutsch v. ZST Digit. Networks, Inc.*, 2018 WL 3005822, at *1 (Del. Ch. June 14, 2018) (noting that upon entry of default, "the court 'accepts as true all the averments in the complaint, as a matter of law'" (quoting *Whitwell v. Archmere Acad., Inc.*, 2008 WL 1735370, at *5 (Del. Super. Apr. 16, 2008)). The only new allegations relating to the existing defendants that appear in Connection's proposed pleading relate to events that happened in the litigation, such as the issuance of various court orders. Those are matters of public record, and Connection has described them in neutral terms.

Connection's care in not changing the legal or factual landscape as to the defaulted defendants is critical, because a party might elect to follow a path that would not lead to default if different claims were asserted or different facts alleged. Indeed, granting leave to amend to add claims or facts, while at the same preserving a default judgment, could well violate the due process rights of the defendant. "Due process, as reflected in Rule 15 . . . , require[s] that [the defendant] be given an opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 463 (2000). If a court granted an amendment that introduced additional claims or facts and simultaneously subjected the defendant to a default judgment on those claims, then the defendant would be denied an

14

opportunity to respond. That approach would "not comply with Rule 15," and it also would not "comport with due process." *Id.* at 466. In this case, however, Connection does not seek to add any claims or assert any new facts against any existing defendant.

The new defendants also will not suffer serious prejudice. The court is not granting a default as to them. Connection will have to serve those defendants, and they will have an opportunity to respond. The additional entity defendants are likely already on notice of this litigation, because Stiffler controls them. *See Sciabacucchi v. Malone*, 2021 WL 3662394, at *8 (Del. Ch. Aug. 18, 2021) (rejecting claim of serious prejudice where the to-be-added party was "controlled by [a party]," was "previously on notice that it was involved in th[e] case, even as a non-party, and . . . ought to have been on notice that it could be open to other claims stemming from the same set of facts").

The other factors that might contribute to a finding of prejudice, such as undue delay, bad faith, a dilatory motive, or the assertion of a futile claim, do not exist. There is no evidence of undue delay or a dilatory motive. Connection has explained credibly that it only recently learned of the existence of the additional entities and only recently perceived the possibility of reverse veil piercing as a means of reaching their assets. There is also no reason to think that Connection is proceeding in bad faith. Connection is simply trying to overcome Stiffler's bad faith use of a maze of entities to evade his legal obligations.

At this stage of the case, the court will not evaluate whether the amendment is futile. When considering a motion to amend, the court generally does not consider the merits of the claim. Wolfe & Pittenger, *supra*, § 4.07[a][1], at 4-29. Nevertheless, "[a] motion to amend may be denied . . . if the amendment would be futile, in the sense that the legal

15

insufficiency of the amendment is obvious on its face." *NACCO Indus., Inc. v. Applica Inc.*, 2008 WL 2082145, at *1 (Del. Ch. May 7, 2008). The proposed amendment is not obviously insufficient. To the contrary, the claim for reverse veil perceiving seems reasonably conceivable. Once the new entities have been served, they will have procedural vehicles available to raise any defenses they may have under Rule 12 or otherwise.

The filing of the amended complaint thus serves the interests of justice and would not cause serious prejudice. Under these circumstances, leave to amend will be granted.

## III.    CONCLUSION

Connection properly moved to amend its complaint under Rule 15(a), notwithstanding the entry of the Default Judgments. Under the circumstances presented, the interests of justice warrant granting leave to amend.